## OSBORNE *v.* FLORIDA.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 87.　Argued December 8, 1896. — Decided January 4, 1897.

The license tax imposed upon express companies doing business in Florida
by § 9 of the statute of that State, approved June 2, 1893, c. 4115, as con-
strued by the Supreme Court of that State, applies solely to business of
the company within the State, and does not apply to or affect its busi-
ness which is interstate in its character; and, being so construed, the
statute does not, in any manner, violate the Federal Constitution.
The construction of the state statute below is not open to review.

F. R. Osborne, the plaintiff in error, was arrested in the
State of Florida for an alleged violation of a statute of that
State in knowingly acting as the agent, at Jacksonville, for
the Southern Express Company, a corporation created under
the laws of the State of Georgia and doing business in Florida,
without having paid the license provided for by statute. He
was required to give a bond for his appearance before the
criminal court of record of Duval County, in the State of
Florida, to answer the charge, and upon his refusal to give
the same he was committed to the common jail of the county
there to await trial. He then applied to the judge of the
state circuit court for a writ of *habeas corpus*, and upon the
hearing his arrest was adjudged to be legal, and he was re-
manded to the custody of the sheriff. The case was sub-
mitted to the circuit court upon an agreed statement of facts
as follows: "That the said F. R. Osborne is the agent of
the Southern Express Company, and that said company is
a corporation created, existing and being under the laws
of the State of Georgia; that said Southern Express Com-
pany is doing a business in the State of Florida ordinarily
done by express companies in the United States of carrying
goods and freight for hire from points within the State of
Florida to points in said State, and also of carrying goods and
freights for hire from points within the State of Florida to
points without the State of Florida in other States in divers

parts of the United States, and in carrying goods and freights for hire from points in other States of the United States to points within the State of Florida, and that it has been engaged in such business for more than twenty years, and was so engaged on the 3d day of October, 1893; that of the business done by the Southern Express Company 95 per cent thereof consists of traffic carrying of goods and freights from the State of Florida into other States, and bringing and carrying from other States of the United States to points within the State of Florida, and 5 per cent thereof consists of carrying goods and freights between points wholly within the State of Florida; that F. R. Osborne did knowingly act as the agent of said express company on the 3d day of October, 1893, in the city of Jacksonville, Duval County, Florida, a city having more than 15,000 inhabitants, the said Southern Express Company having then and there failed and refused to pay the license tax as required by article 12, section 9, of an act entitled 'An act for the assessment and collection of revenue,' of the laws of Florida, approved June 2, 1893; that the Southern Express Company does business in and has agents in more than one town in nearly every county in the State, and that said towns differ in population, and that it has an office and agent and does business in Polk County, Florida, in the following incorporated towns, with a population as follows: Bartow, 1500 inhabitants; F't Meade, 600 inhabitants; Columbia, 600 inhabitants; Lakeland, 800 inhabitants; and Winter Haven, 200 inhabitants. In Orange County: Apopka, 500 inhabitants; Orlando, 10,000 inhabitants; Sanford, 5000 inhabitants; Umatilla, 3000 inhabitants; Winter Park, 600 inhabitants; and Zellwood, 300 inhabitants. In Alachua County: Campville, 400 inhabitants; Archer, 150 inhabitants; Grove Park, 110 inhabitants; Gainesville, 5000 inhabitants; Hawthorne, 300 inhabitants; High Springs, 500 inhabitants; and Island Grove, 200 inhabitants. In Duval County: Jacksonville, with a population of over 15,000; Baldwin, 125 inhabitants."

From the order committing plaintiff in error to the custody of the sheriff an appeal was taken to the Supreme Court of

the State of Florida, and that court affirmed the order. *Osborne* v. *State*, 33 Florida, 162. The plaintiff in error then sued out a writ of error from this court.

*Mr. John E. Hartridge* for plaintiff in error.

*Mr. W. B. Lamar*, Attorney General of the State of Florida, for defendant in error.

MR. JUSTICE PECKHAM, after stating the case, delivered the opinion of the court.

The criminal proceedings against the plaintiff in error were taken by virtue of a statute of Florida, known as chapter 4115, approved June 2, 1893. The ninth section of that chapter provides that: "No person shall engage in or manage the business, profession or occupation mentioned in this section unless a state license shall have been procured from the tax collector, which license shall be issued to each person on receipt of the amount hereinafter provided, together with the county judge's fee of twenty-five cents for each license, and shall be signed by the tax collector and the county judge, and have the county judge's seal upon it. Counties and incorporated cities and towns may impose such further taxes of the same kind upon the same subjects as they may deem proper when the business, profession or occupation shall be engaged in within such county, city or town. The tax imposed by such city, town or county shall not exceed fifty per cent of the state tax. But such city, town or county may impose taxes on any business, profession or occupation not mentioned in this section, when engaged in or managed within such city, town or county. No license shall be issued for more than one year, and all licenses shall expire on the first day of October of each year, but fractional licenses, except as hereinafter provided, may be issued to expire on that day at a proportionate rate, estimating from the first day of the month in which the license is so issued, and all licenses may be transferred, with the approval of the comptroller, with the business for which they were taken out, when there is a *bona fide* sale and trans-

fer of the property used and employed in the business as stock in trade, but such transferred license shall not be held good for any longer time, or for any other place, than that for which it was originally issued."

There are various subdivisions to this section not herein set forth, and they enumerate divers occupations and professions, the members of which are required to procure a license and to pay annually therefor the amounts stated in those subdivisions.

The twelfth subdivision provides, among other things, that " all express companies doing business in this State shall pay in cities of fifteen thousand inhabitants or more a license tax of two hundred dollars; in cities of ten thousand to fifteen thousand inhabitants, one hundred dollars; in cities of five thousand to ten thousand inhabitants, seventy-five dollars; in cities of three to five thousand inhabitants, fifty dollars; in cities of one to three thousand inhabitants, twenty-five dollars; in towns and villages of less than one thousand and more than fifty inhabitants, ten dollars. Any express company violating this provision, and any person that knowingly acts as agent for any express company before it has paid the above tax, payable by such company, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty dollars, or confined in the county jail not less than six months."

In addition to the criminal penalty above set forth, section 10 provides that the payment of all licenses taxed may be enforced by the seizure and sale of property by the collector.

The plaintiff in error assigns two grounds upon which he seeks for a reversal of the judgment of the state court. One is based upon the allegation that the statute, so far as regards the Southern Express Company or himself as its agent, violates the commerce clause of the Federal Constitution, in that it assumes to regulate interstate commerce. The second ground is that the statute is not sufficiently determinate, definite and certain in its character upon which to ascertain the amount to be paid for licenses.

It may be here assumed that if the statute applied to the

express company in relation to its interstate business, it would be void as an attempted interference with or regulation of interstate commerce.

The particular construction to be given to this state statute is a question for the state court to deal with, and in such a case as this we follow the construction given by the state court to the statutes of its own State. *Leffingwell* v. *Warren*, 2 Black, 599; *People* v. *Weaver*, 100 U. S. 539, 541; *Noble* v. *Mitchell*, 164 U. S. 367, 372, and cases there cited.

The Supreme Court of Florida has construed the ninth section of this act and has held in express terms that it does not apply to or affect in any manner the business of this company which is interstate in its character; that it applies to and affects only its business which is done within the State, or is, as it is termed, "local" in its character, and it has held that under that statute so long as the express company confines its operations to express business that consists of interstate or foreign commerce, it is wholly exempt from the legislation in question. It has added, however, that under the provisions of the statute, if the company engage in business within the State of a local nature as distinguished from an interstate or foreign kind of commerce, it becomes subject to the statute so far only as concerns its local business, notwithstanding it may at the same time engage in interstate or foreign commerce. In other words, this statute as construed by the Supreme Court of Florida does not exempt the express company from taxation upon its business which is solely within the State, even though at the same time the same company may do a business which is interstate in its character, and that as to the latter kind of business the statute does not apply to or affect it. As thus construed we have no doubt as to the correctness of the decision that the act does not in any manner violate the Federal Constitution.

The case of *Crutcher* v. *Kentucky*, 141 U. S. 47, is not in the slightest degree opposed to this view. The act which was held to be in violation of the Federal Constitution in that case prohibited the agent of a foreign express company from carrying on business at all in that State without first obtain-

ing a license from the State. The company was thus prevented from doing any business, even of an interstate character, without obtaining the license in question. The act was held to be a regulation of interstate commerce in its application to corporations or associations engaged in that business, and that subject was held to belong exclusively to national and not state legislation.

It has never been held, however, that when the business of the company which is wholly within the State, is but a mere incident to its interstate business, such fact would furnish any obstacle to the valid taxation by the State of the business of the company which is entirely local. So long as the regulation as to the license or taxation does not refer to and is not imposed upon the business of the company which is interstate, there is no interference with that commerce by the state statute. It was stated by Mr. Justice Bradley, in the course of his opinion in the *Crutcher case*, that: " Taxes or license fees in good faith imposed exclusively on express business carried on wholly within the State would be open to no such objection," viz., an objection that the tax or license was a regulation of or that it improperly affected interstate commerce. We have no doubt that this is a correct statement of the law in that regard. The statute herein differs from the cases where statutes upon this subject have been held void, because in those cases the statutes prohibited the doing of any business in the State whatever unless upon the payment of the fee or tax. It was said as to those cases that as the law made the payment of the fee or the obtaining of the license a condition to the right to do any business whatever, whether interstate or purely local, it was on that account a regulation of interstate commerce, and therefore void. Here, however, under the construction as given by the state court, the company suffers no harm from the provisions of the statute. It can conduct its interstate business without paying the slightest heed to the act, because it does not apply to or in any degree affect the company in regard to that portion of its business which it has the right to conduct without regulation from the State.

The company in this case need take out no license and pay

no tax for doing interstate business, and the statute is therefore valid.

The second ground for holding the statute void is that it is not sufficiently determinate, definite and certain in its character upon which to ascertain the amount to be paid for licenses. This ground furnishes no reason for interference by this court. Whether the statute be sufficiently determinate or certain in its character upon which to ascertain the amount to be paid for a license, is a question of the construction of the state statute which does not necessarily involve a Federal question, and the determination of the state court as to the proper construction, and sufficiency of such a statute is conclusive upon us. The learned counsel for plaintiff in error is mistaken in assuming that this court has any more power than formerly to review, upon a writ of error from a state court, the determination of that court in regard to the particular construction to be given to the statutes of its own State. The cases of *Horner* v. *United States*, 143 U. S. 570, and *Carey* v. *Houston & Texas Central Railway*, 150 U. S. 170, have no bearing upon this question. They both refer to the jurisdiction of this court under the fifth section of the act of March 3, 1891, upon appeals or writs of error taken direct from the Circuit or District Courts of the United States to this court. By the last subdivision of section 5 of that act it is provided that: "Nothing in this act shall affect the jurisdiction of the Supreme Court in cases appealed from the highest court of a State nor the construction of the statute providing for the review of such cases." The cases above cited originated in the Circuit Courts of the United States, and were brought direct by appeal or writ of error to this court. This case comes here by writ of error to the Supreme Court of a State, and our jurisdiction to review that judgment is embraced in section 709 of the Revised Statutes. In exercising jurisdiction under that section we do not review such a question as is here presented by plaintiff in error.

Upon the construction given it by the state court the statute does not violate any provision of the Federal Constitution, and the judgment of that court is, therefore,

*Affirmed.*