ALLEN *v.* PULLMAN'S PALACE CAR COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF TENNESSEE.

No. 27. Argued October 16, 1903.—Decided November 16, 1903.

A State may not impose a tax which is in any way a burden upon interstate commerce; but it may impose a privilege tax upon corporations engaged in interstate commerce for carrying on that part of their business which is wholly within the taxing State and which tax does not affect their interstate business or their right to carry it on in that State.

The provision of the tax law of the State of Tennessee of 1887, that sleeping car companies doing business in the State pay a certain sum per annum per car and which by its terms applies to cars running through the State

as well as to those operated wholly within the State, is repugnant to the commerce clause of the Federal Constitution. *Pickard* v. *Pullman Co.,* 117 U. S. 34.

The provision of the tax law of the State of Tennessee of 1889, that sleeping car companies pay a tax of $3,000 per annum in lien of all other except *ad valorem* tax for one or more passengers taken up at one point within the State and delivered at another and transported wholly within the State and which does not refer to or affect the interstate business of the companies, is not repugnant to the commerce clause of the Federal Constitution. *Osborne* v. *Florida,* 164 U. S. 650.

Such tax will not be regarded as a disguised attempt to tax the privilege of engaging in interstate commerce if, under the laws of the taxing State, it is not compulsory for a corporation engaged in interstate commerce to carry on that part of its business which is wholly within that State. *Pullman Co.* v. *Adams,* 189 U. S. 420.

THIS is a writ of error to review the judgment of the Circuit Court for the Middle District of Tennessee in suits brought by the Pullman's Palace Car Company to recover from the State of Tennessee moneys paid under protest for taxes levied and collected by virtue of certain laws of the State requiring the payment of sums for the years 1887 to 1893, inclusive. These statutes are set forth in the opinion. The cases were tried by the court without the intervention of a jury, and separate findings of fact and law were made. From the findings of fact it appears that the Pullman Company, a sleeping car company, operated its cars in Tennessee under a contract with railroad companies traversing the State. These contracts required the Pullman Company to furnish the cars, keep the same in order, and to hire the porters and conductors. The railroad companies paid the Pullman Company for the privileges afforded, furnishing light, heat and water for the cars, and repairing damages due to accident and casualty. The special finding of facts as to the manner of operation in transporting the cars of the Pullman Company sets forth:

During the years 1887 and 1888 the company operated sleeping cars, as follows: A car left Nashville and went to Memphis nightly and on this car tickets were sold to passengers from Nashville to Memphis and not beyond. This car remained in Memphis during the day, returning to Nashville the following

night and going no further. The next night, it went from Nashville by way of Chattanooga to Atlanta, Georgia. It remained in Atlanta during the day and returned the next night from Atlanta to Memphis. On the trip from Memphis tickets were sold from Nashville to Atlanta and to intermediate points in the State of Tennessee. On the nights the cars left Nashville for Memphis and Atlanta for Nashville, a car left Memphis for Nashville and another left Nashville for Atlanta, selling tickets from Memphis to Nashville and intermediate points, and no further, and from Atlanta and intermediate points to Nashville and no further. The car from Memphis to Nashville went on the trip to Atlanta before making a return trip to Memphis, and the car making the trip from Atlanta to Nashville went on the trip the following night to Memphis before making a return trip to Atlanta. The same cars were not used continuously in this service, but were changed from time to time, there being four cars performing the service at all times.

During the year 1887 the East Tennessee, Virginia and Georgia Railroad Company ran two sleepers of its own, doing a business between Knoxville and Chattanooga, Tennessee. During the years 1889, 1890, 1891, 1892 and 1893 the company has operated sleeping cars between Nashville and Memphis and Atlanta and Nashville, as above set forth. From 1887, continuously, the Pullman Company has operated its cars on the lines of the Nashville, Chattanooga and St. Louis Railway, the Louisville and Nashville Railroad, East Tennessee, Virginia and Georgia Railroad, now the Southern Railway, the Newport News and Mississippi Valley Railroad, Illinois Central Railroad and Cincinnati Southern Railroad, and all other railroads within the State of Tennessee whereon sleeping cars are used, and has taken up, carried and put down passengers within the State.

In 1887 sleeping cars were operated during a portion of the year between Nashville and Memphis, and did not pass beyond the limits of the State. It was agreed that, without either party waiving any rights, the plaintiff's claim would be abated $1,234.

The gross receipts of the plaintiff per year from lines running into the State of Tennessee was about five hundred thousand dollars. The gross receipts per year from passengers carried locally in Tennessee was about twenty-five thousand dollars.

The cars actually used on all these lines during each year would number over one hundred.

*Mr. John J. Vertres,* with whom *Mr. Charles T. Cates, Jr.,* Attorney General of the State of Tennessee, was on the brief, for plaintiff in error.

The only question in the case is a constitutional one—whether Acts 1887, ch. 1, sec. 5; Acts 1889, ch. 130, sec. 5; Acts 1891, Ex. Sess. ch. 25, sec. 5, of the Legislature of the State of Tennessee are in violation of article 1, sec. 8, sub-sec. 3 (the interstate commerce clause), of the Constitution of the United States.

The act of 1899 is not inimical to the Federal constitution. As to what is interstate commerce, see *Fargo* v. *Michigan,* 121 U. S. 230, 240.

The question to be determined, stated in general terms, is this: Where a sleeping-car company does *both* an interstate and an intra-state business, can a State tax the intra-state business? Or, stated otherwise: Does the fact that a sleeping-car company does an interstate business, as well as a local or intra-state business, deprive the States of the power to tax the local business?

Two well settled principles are to be noted. *If* the State of Tennessee is possessed of the power to impose this privilege tax, the *amount* of the tax is a question for the Legislature of Tennessee alone to decide. The only concern of this court is with the validity of the tax. All else lies beyond the jurisdiction which it has. *Delaware R. R. Tax,* 18 Wall. 231; *Cal. & Pac. R. R. Co.,* 127 U. S. 141; *Home Ins. Co.* v. *New York,* 134 U. S. 594; *Weston* v. *Charleston,* 2 Pet. 449, 466; *State Tax on Foreign-held Bonds,* 15 Wall. 300, 319; *Kirtland* v. *Hotchkiss,* 100 U. S. 499; *Street R. R. Co.* v. *Morrow,* 87 Tennessee, 432;

*Railroad* v. *Harris*, 99 Tennessee, 684, 709; *Jenkins* v. *Ewin*, 8 Heisk. 477.   The motives of Legislatures, and the policy, or impolicy of statutes, are things with which courts have nothing to do.   *Fletcher* v. *Peck*, 6 Cranch, 87; *Angle* v. *Chicago, etc., R. R. Co.*, 151 U. S. 17; *Lynn* v. *Polk*, 8 Lea (Tenn.), 218, 233, 298; *Railroad* v. *Harris*, 99 Tennessee, 708.

A tax may be imposed by the States upon the local or intra-state branch of a trader's or company's business, which is of both an interstate and an intra-state character, so long as it is *restricted* to the intra-state business, and does not amount to a regulation of the whole.

It is permissible for the States to tax personal *property* employed in interstate commerce like other property within its jurisdiction.   *Pullman Car Co.* v. *Penna.*, 141 U. S. 18, 23; *Am. Ref. Transit Co.* v. *Hall*, 174 U. S. 70.   Such a tax is a "burden" upon the interstate commerce in which the cars are used, but it is not such a burden as to so interfere that it amounts to a regulation.   *Massachusetts* v. *W. U. Tel. Co.*, 141 U. S. 40.   While taxes affecting interstate business have not been upheld in all cases, this court has said that when the tax was confined to intra-state business the tax was legal.   *Postal Telegraph Co.* v. *Charleston*, 152 U. S. 692; *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530; *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Telegraph Co.* v. *Texas*, 105 U. S. 460; *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411; *Western Union Telegraph Co.* v. *Alabama*, 132 U. S. 472; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; *Osborne* v. *Florida*, 164 U. S. 650; *Maine* v. *Grand Trunk Ry.*, 142 U. S. 217.   And see following cases in state courts.   *Railroad* v. *Harris*, 99 Tennessee, 685, 710; *Osborne* v. *State*, 33 Florida, 162; *S. C.*, 25 L. R. A. 120; 39 Am. St. Rep. 99; *State* v. *French*, 109 N. C. 722; *S. C.*, 26 Am. St. Rep. 590; *New Jersey* v. *Board*, 55 N. J. Law, 529; *S. C.*, 25 L. R. A. 134; *W. U. Tel. Co.* v. *Fremont*, 43 Nebraska, 500; *S. C.*, 26 L. R. A. 706; *York City* v. *Chicago, etc., R. R.*, 56 Nebraska, 578; *Ogden City* v. *Utah*, 17 Utah, 76; *W. U. Tel. Co.* v. *Bright*, 90 Virginia, 70; *Ala., etc., R. R.* v. *Besse-*

*mer,* 113 Alabama, 668; *Ohio Express Co.* v. *State,* 55 Ohio. St. 69.

The court below followed *U. S. Express Co.* v. *Allen,* 39 Fed. Rep. 712; *S. C.,* 139 U. S. 591, 658; *Pickard* v. *Pullman Co.,* 117 U. S. 34, but the act of 1875, ch. 130, Code of Tennessee, § 3046, relieves common carriers from being *obliged* to carry passengers. *R. R. Co.* v. *Katzenberger,* 16 Lea, 380.

The act of 1887 is not inimical to the Federal Constitution. The presumption is that the legislature intended to enact a law within its powers. *Grenada* v. *Bragden,* 112 U. S. 269; *Marshall* v. *Grimes,* 4 Mississippi, 27, 31; *United States* v. *Sanges,* 48 Fed. Rep. 77, 91.

If a statute is fairly susceptible of two constructions, that one will be adopted which will avoid the effect of unconstitutionality, even though it may be necessary to disregard the more usual or apparent import of the language employed. *Parsons* v. *Bradford,* 3 Peters, 433; Black on Inter. Laws, 94; *Railroad* v. *Harris,* 99 Tennessee, 687, 704; Suth. on Stat. Const. sec. 332, citing cases from fourteen States.

In making the distinction between the power over commerce and municipal power, literal adherence to particular nomenclature should *not* be allowed to control *construction,* in arriving at the true intention and effect of the state legislation. *Postal Tel. Co.* v. *Adams,* 155 U. S. 700.

Tax laws enacted to further public interests should be construed with liberality. Black on Int. Laws, 325; *Silver* v. *Ladd,* 7 Wall. 219.

It was proper to average the number of cars to be taxed. *Am. Refrigerator Co.* v. *Hall,* 174 U. S. 70; *Union Refrigerator Co.* v. *Snyder,* 177 U. S. 149.

*Mr. William Burry,* with whom *Mr. J. S. Runnells* was on the brief, for the defendant in error.

Cars running between Nashville and Chattanooga were run interstate because they went out of the State in transit. *Hanley* v. *Kansas City R. Co.,* 187 U. S. 617.

The tax under the act of 1887 is a privilege and is identical with *Pickard* v. *Pullman Co.*, 117 U. S. 34. No State can lay a tax on interstate commerce in any form. *Lyng* v. *Michigan,* 135 U. S. 166; *LeLoup* v. *Mobile,* 127 U. S. 640; *Pacific Express* v. *Seibert,* 142 U. S. 350; *Maine* v. *Grand Trunk Ry.,* 142 U. S. 217; *Morgan* v. *Louisiana,* 118 U. S. 455.

The tax on intra-state business is illegal as the Pullman Company is a common carrier and is bound to afford accommodations to any one applying therefor. *Nevin* v. *Pullman Co.,* 106 Illinois, 222; Elliott on Railroads, § 1617; *Attorney General* v. *London &c. Ry. Co.,* 6 Q. B. Div. 216; *Pullman Co.* v. *Smith,* 73 Illinois, 360; *Pullman Co.* v. *Gavin,* 93 Tennessee, 53; *Pullman Co.* v. *Pennsylvania,* 141 U. S. 25; *Adams Express* v. *Ohio,* 165 U. S. 220. State legislation which *may* operate as a burden on or interfere with interstate commerce is obnoxious to the Federal Constitution. *State Freight Tax Case,* 15 Wallace, 232, 277; and other cases already cited; and as to freedom from taxation given to interstate commerce, see *Vance* v. *Vandercook,* 170 U. S. 438; *Am. Refrigerator Co.* v. *Hall,* 174 U. S. 70.

The license tax seeking to make the business liable if only a single passenger tenders fare for intra-state accommodation is a subterfuge to evade the interstate clause of the Constitution. *Crutcher* v. *Kentucky,* 141 U. S. 47, 58; *Austin* v. *Tennessee,* 179 U. S. 343; *Mugler* v. *Kansas,* 123 U. S. 623, 661; *Morgan* v. *Louisiana,* 118 U. S. 462; *Henderson* v. *New York,* 92 U. S. 259, 268. The tax is not valid because laid upon local and domestic, as well as interstate traffic. *State Freight Tax Case,* 15 Wallace, 232, 272.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The taxes in controversy were levied under certain revenue laws of the State of Tennessee. Those for the years 1887 and 1888 provided: "That the rate of taxation on the following

privileges shall be as follows: Sleeping cars: Each company doing business in the State, on each car per annum, $500." Section eight of the act provided: "That any and all parties, firms or corporations exercising any of the foregoing privileges must pay this tax, as set forth in this act, for the exercise of such privilege, whether they make a business of it or not."

The Tennessee act of 1877, imposing a tax upon the running of sleeping cars, was before this court for consideration in the case of *Pickard* v. *Pullman Co.*, 117 U. S. 34. That act provided: "That the running or using of sleeping cars or coaches on railroads in Tennessee, not owned by the railroads upon which they are run or used, is declared to be a privilege, and the companies shall be required to pay to the comptroller by the first day of July following fifty dollars ($50) for each and every said cars or coaches used or run over said roads; and if the said privilege tax herein assessed be not paid as aforesaid the comptroller shall enforce the payment of the same by distress warrant."

It was held that the tax was a burden upon interstate commerce and void because of the exclusive power of Congress to regulate commerce between the States. Unless the statute now under consideration can be distinguished from the one then construed, the *Pickard* case is decisive of the present case. Both taxes were imposed under the power granted by the constitution of Tennessee to lay a privilege tax. This power is held by the Supreme Court of the State to give a wide range of legislative discretion. Any occupation, business, employment or the like, affecting the public, may be classed and taxed as a privilege. *K. & O. Railroad* v. *Harris*, 99 Tennessee, 684. In the act of 1877 the running and using of sleeping cars on railroads in the State, when the cars are not owned by the railroads upon which they are run, is declared to be a privilege. Under the act of 1887, the tax is specifically imposed upon a privilege. Under the act of 1877, the tax imposed was fifty dollars for each car or coach used or run over the road. Under the act of 1887, each company doing business in the State is

required to pay five hundred dollars per annum for the same privilege. The distinction, except in the amount of annual tax exacted, is without substantial difference. Under the earlier act the tax is required for the privilege of running and using sleeping cars on railroads, not owning the cars. In the later act it is exacted for the privilege of doing business in the State. This business consists of running sleeping cars upon railroads not owning the cars and is precisely the privilege to be paid for under the first act, neither more nor less. In neither act is any distinction attempted between local or through cars or carriers of passengers. The railroads upon which the cars are run are lines traversing the State but not confined to its limits. The cars of the Pullman Company run into and beyond the State as well as between points within the State. The act in its terms applies to cars running through the State as well as those whose operation is wholly *intra*-state. It applies to all alike, and requires payment for the privilege of running the cars of the company regardless of the fact whether used in interstate traffic or in that which is wholly within the borders of the State. There is no decision of the Supreme Court of Tennessee limiting the act in its operation to *intra*-state traffic. It is true that the comptroller has sought to restrain the operation of the law by imposing the tax for two years upon cars running between Nashville and Memphis and between Nashville and Chattanooga for two years, and fixing one car in each year as the proportion of local business done on interstate cars for two years. But this action does not conclude the State in taxing for other years, and the action taken by the comptroller does not limit the terms of the law affecting interstate commerce.

In *LeLoup* v. *Mobile*, 127 U. S. 640, 647, it was sought to recover a penalty imposed upon an agent of the Western Union Telegraph Company for failure to pay an annual license tax as required by an ordinance of Mobile. In the course of the opinion denying the right to exact the license fee, Mr. Justice Bradley said: "But it is urged that a portion of the telegraph

company's business is internal to the State of Alabama, and therefore taxable by the State. But that fact does not remove the difficulty. The tax affects the whole business without discrimination. There are sufficient modes in which the internal business, if not already taxed in some other way, may be subject to taxation, without the imposition of a tax which covers the entire operations of the company."

In *Osborne* v. *Florida*, 164 U. S. 650, a license tax upon express companies was sustained, in view of the decision of the Supreme Court of that State that it affected only business of the company within the State. The statute now under consideration requires payment of the sum exacted for the privilege of doing any business when the principal thing to be done is interstate traffic. We are not at liberty to read into the statute terms not found therein or necessarily implied, with a view to limiting the tax to local business, which the legislature in the terms of the act impose upon the entire business of the company. We are of opinion that taxes exacted under the act of 1887 are void as an attempt by the State to impose a burden upon interstate commerce.

Other considerations apply in the construction of the act of 1889, under which, or acts identical in terms, taxes were collected from 1889 to 1893, inclusive. It provides, p. 247, 266, c. 130, April 8, 1889: "Sec. 4. The rate of taxation on the following privileges shall be as follows, per annum: . . . Sleeping car companies (in lieu of all other taxes except *ad valorem* tax). Each company doing business in this State, for one or more passengers taken up at one point in this State and delivered at another point in this State, and transported wholly within the State, per annum, $3,000." Its terms apply strictly to business done in the transportation of passengers taken up at one point in the State and transported wholly within the State to another point therein. It is not necessary to review the numerous cases in this court in which attempts by the States to control or regulate interstate commerce have been the subject of consideration. While they show a zealous care to pre-

serve the exclusive right of Congress to regulate interstate traffic, the corresponding right of the State to tax and control the internal business of the State, although thereby foreign or interstate commerce may be indirectly affected, has been recognized with equal clearness. In the late case of *Osborne* v. *Florida, supra,* Mr. Justice Peckham, speaking for the court, said: "It has never been held, however, that when the business of the company, which is wholly within the State, is but a mere incident to its interstate business, such fact would furnish any obstacle to the valid taxation by the State of the business of the company which is entirely local. So long as the regulation as to the license or taxation does not refer to and is not imposed upon the business of the company which is interstate there is no interference with that commerce by the State statute."

Granting that the right exists whereby a State may impose privilege or license fees upon business carried on wholly within the State, it is argued that the tax of three thousand dollars per annum, collected for carrying one or more local passengers on cars operating within the State, is assessed upon traffic which bears such small proportion to the entire business of the company within the State, that it could not have been levied in good faith upon purely local business, and is but a thinly disguised attempt to tax the privilege of interstate traffic. If the payment of this tax was compulsory upon the company before it could do a carrying business within the State, and the burden of its payment, because of the minor character of the domestic traffic, rested mainly upon the receipts from interstate traffic, there would be much force in this objection. Upon this proposition we are unable to distinguish this case from *Pullman Co.* v. *Adams,* 189 U. S. 420, decided at the last term, wherein it was held that the privilege tax imposed by the State of Mississippi, upon each car carrying passengers from one point in the State to another therein, was a valid tax, notwithstanding the fact that the company offered to show that its receipts from the carrying of the passengers named did not equal the

expenses chargeable against such receipts. This conclusion was based upon the right of the company to abandon the business if it saw fit. It was urged that under the constitution of Mississippi the Pullman Company was a common carrier, required to carry passengers, and therefore could not be taxed for the privilege of doing that which it was compelled to do; but in view of a decision of the Supreme Court of Mississippi, sustaining the tax, it was assumed that no such objection existed under the state constitution. Speaking upon this subject, Mr. Justice Holmes, delivering the opinion of the court, said: "If the clause of the state constitution referred to were held to impose the obligation supposed and to be valid, we assume, without discussion, that the tax would be invalid. For then it would seem to be true that the state constitution and the statute combined would impose a burden upon commerce between the States analogous to that which was held bad in *Crutcher* v. *Kentucky*, 141 U. S. 47. On the other hand, if the Pullman Company, whether called a common carrier or not, had the right to choose between what points it would carry, and therefore to give up the carriage of passengers from one point to another in the State, the case is governed by *Osborne* v. *Florida*, 164 U. S. 650. The company cannot complain of being taxed for the privilege of doing a local business which it is free to renounce. Both parties agree that the tax is a privilege tax."

There is additional reason for holding that the Pullman Company may transact its business in Tennessee without paying this privilege tax and continue its interstate business, declining local business, thereby escaping the attempt to tax it upon business wholly within the State. The statute of Tennessee, enacted in 1875, provides: "The rule of the common law giving a right of action to any person excluded from any hotel, or public means of transportation, or place of amusement, is hereby abrogated; and hereafter no keeper of any hotel, or public house, or carrier of passengers for hire, or conductors, drivers or employés of such carrier or keeper, shall be bound,

or under any obligation to entertain, carry, or admit any person whom he shall, for any reason whatsoever, choose not to entertain, carry or admit to his house, hotel, carriage or means of transportation or place of amusement, nor shall any right exist in favor of such person so refused admission, but the right of such keepers of hotels and public houses, carriers of passengers and keepers of places of amusement and their employés to control the access and admission or exclusion of persons to or from their public houses, means of transportation, and places of amusement, shall be as perfect and complete as that of any private person over his private house, carriage or private theatre or place of amusement for his family." Shannon's Code, § 3046.

Under this act, no carrier is required to admit any passenger to his car or means of transportation. While the Pullman Company may not be technically a common carrier, still we think it comes within the scope and meaning of this act. A sleeping car is obviously a public means of transportation. Under this act, the carrier is not obliged to afford its privileges to those making application therefor. Mr. Justice Blatchford, speaking of the character of the service afforded by sleeping cars, in *Pickard* v. *Pullman Co.,* 117 U. S. 34, said: "The car was equally a vehicle of transit, as if it had been a car owned by the railroad company, and the special conveniences or comforts furnished to the passenger had been furnished by the railroad company itself."

It follows that a tax imposed upon domestic business, under the circumstances shown, cannot be a burden upon interstate commerce in such sense as will invalidate it.

Under the judgment of the court below, the Pullman Company was permitted to recover for license taxes levied under both acts. In so far as it permitted a recovery for taxes under the act of 1889 and identical laws of other years, the judgment should be modified.

*For that purpose, and for further proceedings in accordance with this opinion, the case is remanded to the Circuit Court.*