## ARMOUR PACKING COMPANY *v.* LACY.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 53. Argued November 8, 1905.—Decided January 8, 1906.

The construction, by the highest court of a State, that a license tax imposed on meat packing houses was exacted from a foreign corporation doing both interstate and domestic business only by virtue of the latter, is not open to review in this court.

The Fourteenth Amendment was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways, or

through its undoubted power to impose different taxes upon different trades and professions; and imposing a license tax on meat packing houses is not an arbitrary and unreasonable classification which will render the tax void under the Fourteenth Amendment, as denying the equal protection of the laws. Nor is it a denial of equal protection of the law because the tax is not imposed on persons not doing a meat packing house business but selling products thereof, or because it is not imposed on persons engaged in packing articles of food other than meat.

Where the highest court of the State has so construed the act, a foreign corporation selling its products in the State, but whose packing establishments are not situated in the State, is not for that reason exempt from such a license tax.

The court will not interfere with the conclusion expressed by the highest court of the State that under the provisions of the state constitution a tax is uniform when it is equal upon all persons belonging to the described class upon which it is imposed.

THIS was "a controversy without action," submitted in accordance with the laws of North Carolina in that behalf, in the Superior Court of Buncombe County, that State, in which B. R. Lacy, Treasurer of North Carolina, was plaintiff, and Armour Packing Company was defendant.

By the revenue law of North Carolina of March 9, 1903, Public Laws, N. Car., p. 323, c. 247, it is provided in Schedule B:

"SEC. 26. *Defining taxes under this schedule.* Taxes in this schedule shall be imposed as license tax for the privilege of carrying on the business or doing the act named, and nothing in this act contained shall be construed to relieve any person or corporation from the payment of tax as required in the preceding schedule. . . ."

"SEC. 56. *Packing houses.* Upon every meat packing house doing business in this State, one hundred dollars for each county in which said business is carried on."

"SEC. 88. *Unless prohibited, county may levy same license tax as State.* In case where a specific license tax is levied for the privilege of carrying on any business, trade or profession the county may levy the same tax, and no more: *Provided,* no provision to the contrary is made in the section levying the specific license tax."

Section 107 of chapter 251 of Public Laws of 1903 (p. 407), reads:

"SEC. 107. *State Treasurer to sue for taxes.* Upon failure to pay to the State Treasurer. within thirty days after the same shall have become due, any tax which by law is made payable direct to the State. Treasurer, it shall be his duty to institute an action to enforce the same in the county of Wake, or in the county in which the property taxed is located."

The third section of article V of the constitution of North Carolina provides:

"Laws shall be passed taxing, by uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; . . . The general assembly may also tax trades, professions, franchises, and incomes, . . ."

It appeared from the facts agreed, as in substance stated by the Supreme Court of North Carolina, that the Armour Packing Company was incorporated in New Jersey, but has its principal office and place of business in Kansas, that business being "a meat packing house business," and that it has property in North Carolina; that "a meat packing house is a place where the business of slaughtering animals and dressing and preparing the products of their carcasses for food and other purposes is carried on. The products thus prepared consist of fresh and cured meats, such as hams, dry salt sides, bacon, lard, beef extracts, glue, blood, tankage, etc." That the Armour Packing Company "does not anywhere within the State of North Carolina slaughter, dress, cure, pack or manufacture any products hereinbefore set forth, of any animal, for food, or for commercial use, or for other purposes;" but that after the animals are slaughtered, dressed and prepared for food or other commercial purposes in Kansas, such product is shipped in bulk to Wilmington, Greensboro, Asheville, Charlotte and Fayetteville, N. C., where the company has cold storage plants and warehouses, and sold from such storage plants, some of such product to parties in North Carolina and some to parties outside of that State; that part of said products shipped to

the cold storage warehouse in Asheville, Buncombe County, remain there until disposed of in due course of trade on orders taken and received after said products have been stored or placed in said warehouse or cold storage plants. At each of said five points in North Carolina, where the company maintains a warehouse and cold storage plants, it has one or more employés, *i. e.*, bookkeepers, stenographers, shipping clerks, salesmen, drivers, laborers who box said meats and who wrap and crate goods for delivery as they are sold. There are in Wilmington and other cities of said State commission merchants, brokers and butchers who sell by wholesale and retail in competition with the Armour Packing Company, who are not engaged in a meat packing-house business in North Carolina or elsewhere, fresh, cured and salt meats and other products that have been manufactured from the carcasses of slaughtered animals for food and commercial purposes, and under the laws of North Carolina said commission merchants, brokers and butchers are not amenable to the tax levied under section 56 of said revenue act of 1903. At all points in North Carolina where the Armour Packing Company is engaged in business, and at various other places in said State, there are engaged in business, as the Armour Packing Company is engaged, packing houses which pack articles of food other than meat and offer them for sale in said State, such as peas, beans, tomatoes, corn, pumpkins, fruit, fish, oysters, etc. The products of said packing houses are articles of food and commerce and are sold in the State of North Carolina through agents, brokers, wholesale and retail merchants, just as the products packed by the Armour Packing Company are sold.

The ruling of the court was invoked on certain points stated, all of which were adjudged adversely to defendant, and judgment was rendered against it for the tax and costs, which was affirmed by the Supreme Court of North Carolina. 134 N. Car. 567.

*Mr. Thomas B. Felder, Jr.* for plaintiff in error:

Corporations are persons within the provisions of the Four-

teenth Amendment to the Constitution of the United States. *Santa Clara County* v. *Southern Pacific Ry.*, 118 U. S. 394; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181, 189; *Missouri Pacific Ry.* v. *Mackey*, 127 U. S. 205; *Minn. & St. L. Ry.* v. *Herrick*, 127 U. S. 210; *Minn. & St. L. Ry.* v. *Beckwith*, 129 U. S. 26; *Charlotte & Col. R. R.* v. *Gibbs*, 142 U. S. 386; *Turnpike Co.* v. *Sanford*, 164 U. S. 578.

A State has no more power to deny to corporations the equal protection of the law than it has to individual citizens. *Gulf, Col. & S. F. Ry.* v. *Ellis*, 165 U. S. 154.

A tax on the privilege of selling goods is in effect a tax on the goods themselves. 117 Georgia, 969; *Welton* v. *Missouri*, 91 U. S. 275; *Brown* v. *Maryland*, 12 Wheat. 419.

What must constitute a denial of the equal protection of the law, will depend in this view, in a large measure upon what rights have been guaranteed under the constitution of the State. *N. C. & St. L. Ry.* v. *Taylor*, 86 Fed. Rep. 186.

Uniformity in taxation has been guaranteed by the constitution and laws of North Carolina. See 2 Code of 1883, 706; *State* v. *Moore*, 113 N. Car. 697; *Worth* v. *Railroad Co.*, 89 N. Car. 291; *Pruitt* v. *Commissioners*, 94 N. Car. 709; *Railroad Tax Case*, 92 U. S. 575; *State* v. *Powell*, 100 N. Car. 525; Tiedeman Lim. of Police Power 1, 101; Cooley Taxation, 403; *Re Jacobs*, 98 N. Y. 98; Cooley Const. Lim. 201, 494, 574; *Kansas City* v. *Crush*, 151 Missouri, 135; *St. Louis* v. *Sternberg*, 69 Missouri, 289; *St. Louis* v. *Speigel*, 75 Missouri, 145; Dillon Mun. Corp., § 768; *Ward* v. *Maryland*, 12 Wall. 418.

There must be no discrimination between members of a class. *Home Ins. Co.* v. *New York*, 134 U. S. 606; *Grozza* v. *Turnan*, 148 U. S. 662. The States have the power of classification subject to rule that classification must not be arbitrary or on unreasonable grounds. *Magoun* v. *Illinois Trust Co.*, 170 U. S. 298; *Atchison Railway* v. *Matthews*, 174 U. S. 156; *Cargill Co.* v. *Minnesota*, distinguished.

The act is a burden on interstate commerce. *Allen* v. *Pullman Co.*, 191 U. S. 171.

*Mr. Robert D. Gilmer*, Attorney General of the State of North Carolina, for defendant in error:

The Supreme Court of North Carolina has declared that the statute applies solely to business within North Carolina, and that it does not apply to or affect any interstate business; the statute does not violate the commerce clause of the Constitution. The act does not contravene the constitution of the State, sec. 3, art. V of the constitution of North Carolina, that taxation shall be by uniform rule *ad valorem* applies only to the tax upon property, for it also provides that the General Assembly may also tax trades without any requirement of uniformity as to the latter. *Gatlin* v. *Tarboro*, 78 N. Car. 119. A tax on trades is uniform when it is equal upon all persons belonging to the described class upon which it is imposed. Burroughs on Taxation, §77; *State* v. *Stevenson*, 109 N. Car. 730.

The legislature possesses the power to classify occupations by statutory enactment, and classification in tax statutes will not contravene the rule of uniformity when the tax is imposed alike upon all of a class. *Albertson* v. *Wallace*, 81 N. Car. 479; *State* v. *Cohen*, 84 N. Car. 771; *State* v. *Powell*, 100 N. Car. 525; *State* v. *French*, 109 N. Car. 722; *Cobb* v. *Commissioners*, 122 N. Car. 307; *State* v. *Green*, 126 N. Car. 1032; *State* v. *Carter*, 129 N. Car. 560; *State* v. *Hunt*, 129 N. Car. 686; *State* v. *Roberson*, 136 N. Car. 587.

The General Assembly had the power to create as a classification for taxation "meat packing houses" as a separate and distinct class. *Ford* v. *State*, 112 Indiana, 373, 378; *Stewart* v. *Atlanta Beef Co.*, 93 Georgia, 12; *Stewart* v. *Kehrer*, 115 Georgia, 184.

The decision of the state court that the act does not contravene the constitution of North Carolina is conclusive. *Duncan* v. *McCall*, 139 U. S. 449; *Leeper* v. *Texas*, 139 U. S. 462; *O'Neill* v. *Vermont*, 144 U. S. 323; *McNulty* v. *California*, 149 U. S. 645; *Lambert* v. *Barrett*, 157 U. S. 697; *Bergemann* v. *Backer*, 157 U. S. 655; *Kohl* v. *Lehlbach*, 160 U. S. 293; *Howard* v. *Fleming*, 191 U. S. 126.

The act does not deny the plaintiff in error the equal protection of the laws.

While a foreign corporation may sell its goods in a State or solicit sales in the transaction of interstate commerce as a right, it can only establish itself in a State and do business therein as a privilege granted by the State. *Paul* v. *Virginia,* 8 Wall. 177. The whole matter rests with the State. It may absolutely exclude a corporation organized in another State. *Lafayette Ins. Co.* v. *French,* 18 How. 404; *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28; *Cable* v. *Life Ins. Co.,* 191 U. S. 288, 307.

While this court has declared that taxes imposed for revenue should, be equal, and that there should be no discrimination, it has not decided that provisions for equality are applicable to license taxes. *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Cotting* v. *Stock Yards Co.,* 183 U. S. 79; *Connolly* v. *Sewer Pipe Co.,* 184 U. S. 540 distinguished; and see also as to extent to which classification by legislative enactment has been upheld, *Cargill Co.* v. *Minnesota,* 180 U. S. 452; *Savannah Ry. Co.* v. *Savannah,* 198 U. S. 392; *Kidd* v. *Alabama,* 188 U. S. 730.

Assuming that uniformity and equality are applicable to a license tax, the act is valid as the tax is levied upon every packing house doing business in the State, whether domestic or foreign meat packing houses. The principle of uniformity and of "the equal protection of the laws" secured by the Fourteenth Amendment are not violated so long as the tax rests alike upon all persons or corporations belonging to the particular class as classified by legislative enactment. *Gulf, Col. & Santa Fé Ry.* v. *Ellis,* 165 U. S. 150, and cases cited, p. 155.

There is no denial of the equal protection of the laws to the plaintiff, inasmuch as it is amenable, and parties who sell packing house products by wholesale and retail are not, because those parties are not doing, either in North Carolina or elsewhere, a packing house business, and are therefore not embraced within the terms of the statute.

A statute is not void as denying the equal protection of the laws to meat packing houses because packing houses confined to articles other than meat are not amenable to the same tax. *Cook* v. *Marshall County*, 191 U. S. 261, 275.

The Armour Packing Company is exercising in North Carolina some of the functions for which the corporation was created, and is therefore doing a packing-house business in North Carolina. *Stewart* v. *Kehrer*, 115 Georgia, 184, 188.

With the disposition of state questions by the appropriate state authorities it is not the province of this court to interfere. *Lambert* v. *Barrett,* 157 U. S. 698.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The Supreme Court of North Carolina stated the contentions of the Armour Packing Company thus:

"1. That it is not engaged in doing a packing-house business in this State; . . . 2. That the tax is an interference with interstate commerce; 3. That the tax contravenes section three of article V of the constitution of North Carolina, which requires that taxation be 'by uniform rules;' 4. That the tax is forbidden by the Fourteenth Amendment to the Constitution of the United States; 5. That singling out 'meat packing houses' is arbitrary or class legislation, and prohibited by both State and Federal Constitutions."

The court said:

"If the business of the defendant was solely that of shipping food products into this State, consigned directly to purchasers on orders previously obtained, it is clear that this would be interstate commerce and a tax laid by the State upon such business would be illegal. But the defendant does a large business within the State, the selling of products already stored here on orders received after these products are thus stored. The tax is laid upon every meat packing house 'doing business in this State.' The evident meaning of the legislature is to

tax the agency 'doing business within this State', and not to
lay any tax upon the interstate commerce of shipping products
into the State to be directly or indirectly delivered to pur-
chasers. whose orders were obtained before the goods were
shipped."

And, after recapitulating from the agreed statement the par-
ticulars of the business transacted in North Carolina, the court
applied the rule that the legislature could prescribe such con-
ditions as it saw fit on the transaction of business by a foreign
corporation within the State, and held that the license tax was
the condition upon which defendant was permitted to do the
business so described; and cited *Osborne* v. *Florida,* 164 U. S.
650, as decisive on the question that the license tax applied
only to business within the State and not to that which was
interstate in its character; and added: "The defendant doing
business in this State and the license tax being exacted only by
virtue of its intrastate business, the first two grounds of ob-
jection are overruled."

As was said in *Osborne* v. *Florida,* this construction of a
state statute by its highest court is not open to review; and
accepting it the case plainly comes within *Kehrer* v. *Stewart,*
197 U. S. 60. That was a writ of error to the Supreme Court
of Georgia (117 Georgia, 969; 115 Georgia, 184), involving
the constitutionality of a statute imposing a tax upon packing
house agents and the liability of an agent of Nelson Morris &
Company, a meat-packing firm of Chicago, to pay it. It was
contended that Morris & Company did not slaughter, dress,
cure, pack or manufacture the products of animals for food
anywhere in the State of Georgia, and that therefore the firm
was not doing a packing-house business within the State; that
the statute violated the commerce clause of the Constitution,
and that it was invalid in that it denied the equal protection
of the laws. These contentions were overruled by the Supreme
Court of Georgia and this court affirmed the judgment. And
among other things it was there said:

"The act in question does not deny to the petitioner the

equal protection of the laws, as the tax is imposed alike upon the managing agent both of domestic and of foreign houses. . . . There is no discrimination in favor of the agents of domestic houses, and, while we may suspect that the act was primarily intended to apply to agents of *ultra* state houses, there is no discrimination upon the face of the act, and none, so far as the record shows, upon its practical administration. As we have frequently held, the State has the right to classify occupations and to impose different taxes upon different occupations. Such has been constantly the practice of Congress under the internal revenue laws. *Cook* v. *Marshall County,* 196 U. S. 261, 275. What the necessity is for such tax, and upon what occupations it shall be imposed, as well as the amount of the imposition, are exclusively within the control of the state legislature. So long as there is no discrimination against citizens of other States, the amount and necessity of the tax are not open to criticism here." 197 U. S. 69.

This practically disposes of the fourth and fifth contentions, since the classification of meat packing houses cannot be said to be an arbitrary selection or not to rest on reasonable grounds, and the Fourteenth Amendment was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways, or through the undoubted power of classification to impose different taxes upon different trades and professions.

"A tax may be imposed only upon certain callings and trades, for when the State exerts its power to tax, it is not bound to tax all pursuits or all property that may be legitimately taxed for governmental purposes. It would be an intolerable burden if a State could not tax any property or calling unless, at the same time, it taxed all property or all callings." *Connolly* v. *Union Sewer Pipe Company,* 184 U. S. 540, 562.

And see *Cargill Company* v. *Minnesota,* 180 U. S. 452; *Kidd* v. *Alabama,* 188 U. S. 730; *Savannah, Thunderbolt &c. Ry. Co.* v. *Savannah,* 198 U. S. 392; *Minnesota Iron Company* v. *Kline,*

199 U. S. 593; *Cable* v. *United, States Life Insurance Company*, 191 U. S. 288, 307.

By the act under consideration the tax is levied upon every packing house doing business in the State, which includes by its terms both domestic and foreign meat packing-houses. It is true that it appears that where the Armour Packing Company does business certain persons sell both by wholesale and retail packing-house products, and yet are not subjected to this tax, but also that those parties are not doing either in North Carolina or elsewhere a packing house business. And so it appears that in North Carolina, at the points where the Armour Packing Company is engaged in business, and at other places in the State, there are establishments engaged in business, which pack articles of food other than meats, such as peas, beans, pumpkins, etc., and offer them for sale; but we cannot accept the suggestion that the statute is void as denying the equal protection of the laws to meat packing-houses because houses packing vegetables and the like are not included in the same classification and subject to the same tax.

As to the contention that the act is in violation of section 3 of article V of the state constitution, the state Supreme Court held that this tax, although not a property or *ad valorem* tax, was controlled, even if the requirement of uniformity were applicable, by the rule that "a tax is uniform when it is equal upon all persons belonging to the described class upon which it is imposed." And with that conclusion it is not our province, nor are we disposed, to interfere.

*Judgment affirmed.*

MR. JUSTICE BROWN, with whom was MR. JUSTICE PECKHAM, dissenting.

The main, and practically the only question in this case is whether the Armour Packing Company was a "meat packing house doing business" in the State of North Carolina within

the meaning of the statute.   The seventh and eighth items of the stipulation of facts are as follows:

"7. A meat packing house is a place where the business of slaughtering animals and dressing and preparing the products of their carcasses for food and other purposes is carried on. The products thus prepared consist of fresh and cured meats, such as hams, dry salt sides, bacon, lard, beef extracts, glue, blood, tankage, etc.

"8. Said Armour Packing Company does not anywhere within the State of North Carolina slaughter, dress, cure, pack or manufacture any products hereinbefore set forth, of any animal, for food, or for commercial use, or for other purposes."

As one article of the findings defines the meat packing business to consist in doing certain things, and the very next article declares that none of these things are done within the State, it is difficult to say that, notwithstanding these findings of fact, there is a conclusion of law that the company is doing a meat packing business in that State.   The Packing Company doubtless falls within the letter of the statute.   It does a meat packing business in Kansas City.   It does a business in North Carolina.   But as we have said in numerous cases, a thing may be within the letter of a statute and not be within its spirit. *United States* v. *Babbitt*, 1 Black, 55.   The letter of the statute in this case would be satisfied if the Packing Company did a furniture or dry goods business in North Carolina, yet it would clearly not be within the intent of the statute.   If, for instance, the tax were upon breweries, and the beer were all manufactured out of the State and then shipped into the State for sale and distribution, is it possible that the defendant would be liable for doing business as a brewer?   So if the tax were imposed upon manufacturers of carriages, and all the manufacturing were done in Chicago, and the carriages shipped into North Carolina and there sold, the defendant would be liable as a dealer in carriages, but certainly not as a manufacturer. The business done at the five cold storage plants, which consists in packing the meats and wrapping them for delivery as

they are sold, *is not mentioned* in the seventh finding, even as an incidental part of the packing business. Much less even is the business of selling meats at retail as ordinary butchers do. Yet, in the opinion of the court, the company was doing a meat packing-house business within the State. In the view of the minority the business done within the State must be a meat packing business, and not the business of selling meats either at wholesale or retail, and when the meat packing house is accurately defined in the stipulation, and no part of the business thus defined appears to have been done within the State, it is impossible to support the tax.

The case resembles that of *Kehrer* v. *Stewart*, 197 U. S. 60, in many particulars, but with the vital difference that the law of Georgia imposed a tax upon "all *agents* of packing houses doing business within this State, $200, in each county where said business is carried on." As the tax was imposed upon agents of packing houses, and not upon the packing houses themselves, the court was unanimously of the opinion that the managing agents of foreign packing houses were subject to the tax. But in this case the act attempts to reach out and tax packing houses doing business *as such* exclusively in another State.

With the utmost deference to the opinion of the court, we are constrained to dissent from its view.

MR. JUSTICE WHITE and MR. JUSTICE McKENNA also dissented upon other grounds.