[No. 11644.    Department One.    December 13, 1913.]

THE STATE OF WASHINGTON, *Appellant*, v. NORTHERN
EXPRESS COMPANY, *Respondent*.[1]

CARRIERS—EXPRESS COMPANIES—DUTIES—RENUNCIATION OF STATE
BUSINESS—POWER. A foreign express company having an interstate
business in this state is not free to renounce intrastate business, in
the absence of any suggestion that the local business is done at a
loss, in view of Const., art. 12, § 13, making express companies
"common carriers, subject to legislative control," and Const., art. 12,
§ 7, providing that foreign corporations shall not be permitted to do
business within the state on more favorable conditions than do-
mestic corporations; and Laws 1911, p. 538 *et seq.*, §§ 8, 9, 10, 53
(3 Rem. & Bal. Code, §§ 8626-8, 8626-9, 8626-10, 8626-53), providing
that express companies shall furnish adequate and sufficient service
and facilities to promptly and properly handle all property offered
to or received by them for transportation, under reasonable rules, and
empowering the public service commission to require every common
carrier to furnish an adequate service.

COMMERCE—INTERSTATE COMMERCE—REGULATION BY STATE—EXCISE
TAX—VALIDITY. Rem. & Bal. Code, § 9167, levying an excise or
privilege tax upon express companies, of five per cent upon the gross
receipts of business done within the state of Washington, conflicts
with the commerce clause of the Federal constitution, being a direct
burden upon and regulation of interstate commerce.

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered September 9, 1913, dismiss-
ing an action to collect a tax, upon overruling a demurrer to
the answer. Affirmed.

*The Attorney General* and *Stephen V. Carey, Assistant,*
for appellant.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte (F. V.
Brown,* of counsel), for respondent.

GOSE, J.—This is an action brought by the state to collect
an "excise or privilege" tax, under Laws 1907, p. 79, § 2
(Rem. & Bal. Code, § 9162; P. C. 433 § 75). The defendant
in due form raised the objection that the tax law is repugnant
to the commerce clause of the Federal constitution.

[1]Reported in 136 Pac. 1160.

The complaint alleges facts which show that the tax was levied in compliance with the statute, Laws 1907, p. 79, and that it is due to the state if the statute is valid. The defendant, in avoidance of the tax, alleges affirmatively, that it is a corporation duly organized under the laws of the state of New Jersey, with power to conduct an express business in the several states of the Union; that it owns and operates an express business, on the line of the Northern Pacific Railway Company from the city of Ashland in the state of Wisconsin, through the states of Minnesota, North Dakota, Montana, and Washington, to the cities of Tacoma and Seattle in this state, and thence through this state to the city of Portland, in the state of Oregon; that it came into the state prior to the passage of the act in controversy, for the purpose of transacting its express business, and fully complied, and has continued to fully comply, with the laws of the state relating to foreign corporations doing business in this state, and that the tax and the law under which it was levied are a direct burden upon, and regulation of, interstate commerce, in violation of § 8, art. 1, of the Federal constitution. The state's demurrer to the affirmative matter in the answer was overruled. It having elected to stand upon the demurrer, and declining to plead further, the case was dismissed. The state has appealed.

The tax was imposed under the provisions of Laws 1907, page 79. The statute provides, § 2 (Rem. & Bal. Code, § 9162 (P. C. 433 § 75), that every express company shall annually, between certain fixed dates, make and file with the state board of tax commissioners a statement containing "the entire receipts (including all sums earned or charged, whether actually received or not) for business done within this state, including its proportion of gross receipts for business done by such company within this state in connection with other companies." Section 3 (Rem. & Bal. Code, § 9163 [P. C. 433 § 77]), prescribes how the board shall ascertain

the entire gross receipts of express companies for business done within the state for the particular year, and provides that the amount so ascertained shall be held and deemed to be the gross receipts of such company for business done within the state for the year under consideration. Section 7 (Rem. & Bal. Code, § 9167 [P. C. 433 § 85]), provides that:

"It shall be the duty of the state treasurer, annually, to collect from each express company, doing business in this state, a sum in the nature of an excise or privilege tax, to be computed by taking five per centum of the amount fixed by the state board of tax commissioners as the gross receipts of such express company for business done within the state of Washington for the year next preceding the first day of April, as determined and certified by the state board of tax commissioners: *Provided*, Nothing contained in this act shall exempt or relieve any express company from the assessment and taxation of their tangible property in the manner authorized and provided by law."

The single question presented by the appeal is whether the statute is repugnant to the commerce clause of the Federal constitution. This is confessedly a Federal question, upon which the decisions of the Federal supreme court are controlling. Counsel for both parties have presented their argument under two principal heads or topics: (1) Under the constitution and public service law of the state, is an express company free to take or renounce business within the state as it may choose? The appellant contends that it is free so to do, whilst the respondent contends that it is not. And (2), in either case, is the law in conflict with the commerce clause of the Federal constitution? These questions will receive consideration in the order stated.

Section 13, art. 12, of the constitution of the state, provides:

"All railroad, canal, and other transportation companies are declared to be *common carriers, and subject to legislative control*."

Section 15, art. 12, provides that transportation companies shall not discriminate between places or persons or in the facilities afforded upon the same class of freight or packages within the state "or coming from or going to any other state." Section 21, art. 12, provides:

"Railroad companies, now or hereafter organized or doing business in this state shall allow all express companies organized or doing business in this state transportation over all lines of railroad owned or operated by such railroad companies upon equal terms with any other express company; and no railroad corporation organized or doing business in this state shall allow any express corporation or company any facilities, privileges, or rates for transportation of men or materials or property carried by them, or for doing the business of such express companies, not allowed to all express companies."

Section 7, art. 12, of the constitution, and Rem. & Bal. Code, § 3720 (P. C. 405 § 359), provide that a foreign corporation shall not be permitted to transact business within the state on more favorable conditions than domestic corporations. The public service commission law, Laws 1911, page 538 (3 Rem. & Bal. Code, § 8626-1 *et seq.*), contains the following provisions: Section 8 (Id., § 8626-8) provides that the term "common carrier" includes "express companies." Section 9 (Id., § 8626-9) provides that every common carrier shall furnish adequate and sufficient service and facilities to enable it to "promptly, expeditiously, safely and properly" handle all persons "or property offered to or received by it for transportation," etc. Section 10 (Id., § 8626-10) provides:

"Every common carrier shall under reasonable rules and regulations promptly and expeditiously receive, transport and deliver all persons or property offered to or received by it for transportation."

Section 53 (Id., § 8626-53) empowers the public service commission to require every common carrier to accommodate its business and facilities to the requirements of the law, to the

end that it shall furnish the public a reasonably adequate service at a reasonable price. These sections are supplemented by other provisions of the law imposing obligations and restrictions such as to render the law efficacious. It is significant that these duties, restrictions, and regulations are made to specifically apply to "every common carrier." To sustain the argument of the *Attorney General* that the provisions of the statute are mandatory as to all public service companies having their own equipment, such as railroad, telegraph and telephone companies, and that because express companies have no such equipment they are free to renounce local business, would be an unwarranted limitation of both the letter and the spirit of the statute.

Nor is it necessary for us to construe § 21, art. 12, of the constitution. It has reference to the duties of railroad companies toward express companies. There is no controversy here between such companies. The question here is between the state and an express company. Neither the express company nor the state is complaining because of the failure of the railroad company to grant any right arising out of that section of the constitution. Nor are we confronted with the question whether an express company can be required to continue to carry on a local business at a loss. The record presents no such question.

The state relies chiefly upon the rule announced in *Express Cases*, 117 U. S. 1. That was a suit between certain railroad companies and certain express companies, the latter contending that it was the duty of the railroad companies to act as common carriers for the express companies. The court held that, so long as a railroad company gave the public a reasonably adequate express service itself or through its chosen agencies, it could not, in the absence of legislation or a definite contract, be required, at the suit of an express company, to serve it; that is, it could not be required to become a common carrier "of a common carrier." The case is not apposite

in the light of our interpretation of the constitution and laws of the state. We think that it would be a perversion of the constitution and the public service statute to hold that an express company (admittedly a common carrier) has the "right to choose between what points it would carry and therefore could give up the carrying [of goods usually carried by express companies] from one point to another within the state." In other words, it is controlled by the public service statute, at least so long as it does an interstate business through the state when there is no suggestion that the local business is being conducted at a loss.

This brings us to the principal question, that is, Is the statute under which the tax is levied repugnant to the commerce clause of the Federal constitution? As we read the cases, this question is foreclosed against the state by the decisions of the Federal supreme court. *Pullman Co. v. Adams,* 189 U. S. 420; *Crutcher v. Kentucky,* 141 U. S. 47; *Allen v. Pullman's Palace Car Co.,* 191 U. S. 171; *Western Union Tel. Co. v. Kansas ex rel. Attorney General,* 216 U. S. 1; *Galveston, H. & S. A. R. Co. v. Texas,* 210 U. S. 217; *United States Express Co. v. Minnesota,* 223 U. S. 335; *Oklahoma v. Wells, Fargo & Co.,* 223 U. S. 298.

In the *Adams* case, it was held that a privilege tax imposed upon an interstate carrier on account of local business is valid under the law of the state if the carrier is "free to renounce local business," but that, if the state law requires the carrier to accept local business, the tax would be invalid as an interference with commerce between the states. The statute there reviewed provided that,

"A tax on privileges is levied as follows, towit, . . . Sleeping car companies: On each sleeping and palace-car company carrying passengers from one point to another within the state, one hundred dollars, and twenty-five cents per mile for each mile of railroad-track over which the company runs its cars."

In considering the statute, the court said:

"If the clause of the state constitution referred to were held to impose the obligation supposed and to be valid, we assume without discussion that the tax would be invalid. For then it would seem to be true that the state constitution and the statute combined would impose a burden on commerce between the states analogous to that which was held bad in *Crutcher v. Kentucky*, 141 U. S. 47. On the other hand, if the Pullman Company, whether called a common carrier or not, had the right to choose between what points it would carry, and therefore to give up the carriage of passengers from one point to another within the state, the case is governed by *Osborne v. Florida*, 164 U. S. 650. The company cannot complain of being taxed for the privilege of doing a local business which it is free to renounce. Both parties agree that the tax is a privilege tax. As the validity of the tax is thus bound up with the effect of the section of the state constitution, we think that the Pullman Company was entitled to know how it stood under the latter, and that a judgment against it could not be justified by reasoning which leaves that point obscure."

In *Crutcher v. Kentucky*, a statute of the state of Kentucky, making it unlawful for an agent of any express company not incorporated under the laws of the state to engage in the business of transportation therein without first procuring a prescribed license, was held to be a direct invasion of the commerce clause of the Federal constitution. After a reference to the statute, the court said:

"It is a prohibition against carrying on of such business without a compliance with the state law . . . To carry on interstate commerce is not a franchise or a privilege granted by the state; it is a right which every citizen of the United States is entitled to exercise under the constitution and laws of the United States, and the accession of mere corporation facilities, as a matter of convenience in carrying on their business, cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject. . . . We have repeatedly decided that a state law is unconstitutional and void which requires a party to take out a license for carrying on inter-

state commerce, no matter how specious the pretext may be for imposing it. . . . We do not think that the difficulty is at all obviated by the fact that the express company, as incidental to its main business, (which is to carry goods between different states,) does also some local business by carrying goods from one point to another within the state of Kentucky. This is, probably, quite as much for the accommodation of the people of that state as for the advantage of the company. But whether so or not, it does not obviate the objection that the regulations as to license and capital stock are imposed as conditions on the company's carrying on the business of interstate commerce, which was manifestly the principal object of its organization. These regulations are clearly a burden and a restriction upon that commerce. Whether intended as such or not they operate as such."

In the *Allen* case, it was held that a law requiring the payment of a tax for the privilege of running cars through the state, as well as upon those operated wholly within the state, was void as an attempt by the state to impose a burden upon interstate commerce. In *Western Union Tel. Co. v. Kansas ex rel. Attorney General*, the court, in considering the effect of a statute of the state of Kansas which provided that "each corporation which has received authority from the charter board to organize shall, before filing its charter with the secretary of state as provided by law, pay to the state treasurer of Kansas for the benefit of the permanent school fund a charter fee of one-tenth of one per cent of its authorized capital upon the first $100,000 of its capital stock," and for a descending graduated tax upon all of its capital stock in excess of that amount, said:

"The authorities cited show that this court has guarded with both diligence and firmness the freedom of interstate commerce against hostile state or local action, as such action has been manifested by regulations operating, in some instances, directly, in others indirectly, upon the means or instruments employed in that commerce. This has been done without violating the principle that an interstate carrier, entering a state for purposes of its business, is subject to local regulations that in their essence and purpose only incident-

ally affect interstate commerce, but are established in good faith for the protection, safety, comfort and convenience of the people, are not in themselves in any real, just sense an obstruction to or in conflict with the substantial rights of those engaged in interstate commerce, but are referable to the police powers of the state, and to be respected until Congress covers the subject by legislation. *Cooley v. Port Wardens,* 12 How. 299, 320; *Sherlock v. Alling,* 93 U. S. 99, 104; *Morgan's Louisiana & T. R. & S. S. Co. v. Board of Health,* 118 U. S. 455, 463; *Smith v. Alabama,* 124 U. S. 465; *Nashville, C. & St. L. R. Co. v. Alabama,* 128 U. S. 96, 100; *N. Y. & N. H. & H. R. R. Co. v. New York,* 165 U. S. 628, 631, 632; *Missouri, Kansas & Texas Ry. Co. v. Haber,* 169 U. S. 613, 626; *Lake Shore & M. S. R. Co. v. Ohio,* 173 U. S. 285, 297. We are aware of no decision by this court holding that a state may, by any device or in any way, whether by a license tax, in the form of a 'fee,' or otherwise, burden the interstate business of a corporation of another state, although the state may tax the corporation's property regularly or permanently located within its limits, where the ascertainment of the amount assessed is made 'dependent in fact on the value of its property *situated within the state.*' *Postal Telegraph Co. v. Adams,* 155 U. S. 688, 696; *Leloup v. Mobile,* 127 U. S. 640, 649. On the contrary, it is to be deduced from the adjudged cases that a corporation of one state, authorized by its charter to engage in lawful commerce among the states, may not be prevented by another state from coming into its limits for all the legitimate purposes of such commerce. It may go into the state without obtaining a license from it for the purposes of its interstate business, and without liability to taxation there, *on account of such business.*"

And it further said: ·

"If the statute, reasonably interpreted, either directly or by its necessary operation, burdens interstate commerce, it must be adjudged to be invalid, whatever may have been the purpose for which it was enacted, and although the company may do both interstate and local business. This court has repeatedly adjudged that in all such matters the judiciary will not regard mere forms, but will look through forms to the substance of things. ·Such is an established rule of constitutional construction as the adjudged cases abundantly show."

And referring to the *Adams* case, the court said:

"The court did not hold that the state could, in any form, directly burden interstate commerce. It really held to the contrary."

And referring to the *Allen* case, it is said:

"In the *Allen* case the license tax there in question under the Tennessee act of 1887 was imposed generally on account of each sleeping car used on railroads traversing the state, *without any discrimination being made between cars transporting interstate passengers and those transporting local passengers.* On that ground the tax was held to be void."

In dissenting, Mr. Justice Holmes said:

"The whole matter is left in the Western Union's hands. If the license fee is more than the local business will bear it can stop that business and avoid the fee. Whether economically wise or not, I am far from thinking that the charge is inherently vicious or bad. If the imposition were absolute, or if the attempt were to oust the corporation from the state if it did not pay, the arguments that prevail would be apposite. But the state seeks only to oust the corporation from that part of its business that the corporation has no right to do unless the state gives leave."

In *Galveston H. & S. A. R. Co. v. Texas,* the act which was under review was:

"An act imposing a tax upon railroad corporations . . . and other persons . . . owning . . . or controlling any line of railroad in this state . . . equal to one per cent. of their gross receipts . . ., and repealing the existing tax on the gross passenger earnings of railroads."

After observing that the lines of the railroads concerned were wholly within the state, that they connected with other lines, that a part—in some instances a larger part—of their gross receipts was derived from the carriage of packages and freight coming from or destined to points without the state, the court said:

" 'By whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a

just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the constitution.' *Postal Telegraph Cable Co. v. Adams,* 155 U. S. 688, 697. See *New York, Lake Erie & Western R. R. Co. v. Pennsylvania,* 158 U. S. 431, 438, 439. The question is whether this is such a tax. It appears sufficiently, perhaps from what has been said, that we are to look for a practical rather than a logical or philosophical distinction. The state must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand the state cannot tax the interstate business. The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. When a legislature is trying simply to value property, it is less likely to attempt to or affect injurious regulation than when it is aiming directly at the receipts from interstate commerce. A practical line can be drawn by taking the whole scheme of taxation into account. That must be done by this court as best it can. Neither the state courts nor the legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect. If it bears upon commerce among the states so directly as to amount to a regulation in a relatively immediate way, it will not be saved by name or form. *Stockard v. Morgan,* 185 U. S. 27, 37; *Asbell v. Kansas,* 209 U. S. 251, 254, 256. We are of opinion that the statute levying this tax does amount to an attempt to regulate commerce among the states."

Mr. Justice Harlan dissented, saying:

"But it is said that the tax in question, even if regarded as an occupation tax, is invalid, as constituting a direct burden on interstate commerce, the regulation of which belongs to Congress. It is not, in my opinion, to be taken as a tax on interstate commerce in the sense of the constitution; for its operation on interstate commerce is only incidental, not direct. A state, in the regulation of its internal affairs, often prescribes rules which in their operation, remotely or incidentally, affect interstate commerce. But such rules have never been held as in themselves imposing direct burdens upon such commerce, and on that ground invalid. The state in the present case ascertains the extent of business done by the corporation in the state, and requires an annual occupation

tax 'equal' to a named per centum of the amount of such business. It does not lay any tax directly upon the gross receipts as such, . . ."

We are not able to distinguish the case at bar from *Galveston H. & S. A. R. Co. v. Texas*. Indeed, the two acts in meaning are identical except that our statute defines the tax as "an excise or privilege tax," and imposes it in addition to a property tax. The argument of the *Attorney General*, in substance and effect, is the same as that made in the dissenting opinion of Mr. Justice Harlan. In the *Minnesota* case, a distinction was made between a legitimate tax laid upon property, although engaged in interstate commerce, and an attempt in the guise of taxation to impose real burdens upon interstate commerce as such, the court saying that the former was not, and that the latter was, invalid. In the *Oklahoma* case, a statute was condemned which provided that:

"Every corporation hereinafter named shall pay the state a gross revenue tax . . . which shall be in addition to the taxes levied and collected upon an *ad valorem* basis upon the property and assets of such corporation equal to the per centum of the gross receipts hereinafter provided, if such public service corporation operate wholly within the state, and if such public service corporation operates partly within and partly without the state, it shall pay tax equal to such proportion of said per centum of its gross receipts as the portion of its business done within the state bears to the whole of its business; . . ."

In *Adams Express Co. v. Ohio State Auditor*, 165 U. S. 194, cited by the state, the basis of assessment provided by the statute was:

"The true value in money of the entire property of said companies within the state of Ohio, in the proportion which the same bears to the entire property of said companies, as determined by the value of the capital stock thereof."

The statute was held valid, the court saying:

"The principal contention is that the rule contravenes the commerce clause because the assessments, while purporting

to be on the property of complainants within the state, are in fact levied on their business, which is largely interstate commerce. Although the transportation of the subjects of interstate commerce, or the receipts received therefrom, or the occupation or business of carrying it on, cannot be directly subjected to state taxation, yet property belonging to corporations or companies engaged in such commerce may be; and whatever the particular form of the exaction, if it is essentially only property taxation, it will not be considered as falling within the inhibition of the constitution. Corporations and companies engaged in interstate commerce should bear their proper proportion of the burdens of the governments under whose protection they conduct their operations, and taxation on property, collectible by the ordinary means, does not affect interstate commerce otherwise than incidentally, as all business is affected by the necessity of contributing to the support of government."

In referring to this case in the later case of *United States Express Co. v. Minnesota, supra,* the court said that the tax was sustained in the Ohio case as a property tax, "upon the property of an express company, which property was considered a part of one money-earning organization extending through many states." But where a gross revenue tax was laid in addition to an *ad valorem* tax, the court said in the *Oklahoma* case, *supra,* that there was no warrant for calling the tax a property tax.

We think the case at bar is ruled by the conclusion reached in the *Adams, Texas,* and *Oklahoma* cases. A further review by this court would be fruitless. Our duty is to follow the rule laid down by the Federal supreme court. This, as we read its decisions, requires an affirmance of the judgment.

Crow, C. J., Main, Ellis, and Chadwick, JJ., concur.