[Nos. 11643½, 11644. *En Banc.* June 30, 1914.]

THE STATE OF WASHINGTON, *Appellant*, v. NORTHERN EXPRESS COMPANY, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. GREAT NORTHERN EXPRESS COMPANY, *Respondent*.[1]

COMMERCE—INTERSTATE COMMERCE—REGULATION BY STATE — EXCISE TAX—VALIDITY. Rem. & Bal. Code, §§ 9161-9168, levying an excise or privilege tax upon express companies upon the gross receipts for business done within the state of Washington, refers to business begun and ended within this state, and being a tax upon intrastate commerce only, does not impose a burden upon interstate commerce (overruling on rehearing, Id., 76 Wash. 636).

CARRIERS—EXPRESS COMPANIES—DUTIES—RENUNCIATION OF INTRASTATE BUSINESS—POWER. The state having no power to place a burden upon interstate commerce, an interstate express company doing business in this state is free to renounce its intrastate business, notwithstanding the constitutional and statutory provisions making express companies common carriers subject to state control, and prohibiting discrimination in privileges and transportation charges (overruling on rehearing Id., 76 Wash. 636).

GOSE and CHADWICK, JJ., dissent.

Appeals from judgments of the superior court for Thurston county, Mitchell, J., entered September 9, 1913, and October 11, 1913, dismissing actions to collect a tax, upon overruling demurrers to the answers. Reversed.

[1]Reported in 141 Pac. 757.

*The Attorney General* and *Stephen V. Carey, Assistant,* (*John H. Powell,* of counsel), for appellant.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte* (*F. V. Brown,* of counsel), for respondent Northern Express Company.

*F. V. Brown* and *F. G. Dorety,* for respondent Great Northern Express Company.

MORRIS, J.—The first of these cases was heard by Department One, in November, 1913, and an opinion filed December 13, 1913; 76 Wash. 636, 136 Pac. 1160. A rehearing has been granted, and the case reheard by the court *En Banc.* The second case involves the same question. Accordingly the cases have been consolidated and heard together. The facts will not be restated, except as we find it necessary to refer to them.

As stated in the department opinion, the single question presented by both cases is whether the statute in question is repugnant to the commerce clause of the Federal constitution. The statute, which will be found in Laws 1907, p. 79; Rem. & Bal. Code, §§ 9161 to 9168 (P. C. 433 §§ 73-87), imposes a privilege tax of five per cent upon the gross receipts of express companies for business done within this state. In reaching our conclusion, we may accept certain principles as established: (1) Subject to constitutional limitations, a state has the power to regulate the doing of local business within its borders. *Pullman Co. v. Kansas,* 216 U. S. 56. (2) A state may not exert its concededly lawful powers in such a manner as to impose a direct burden on interstate commerce. (3) A state has the right to tax property although it is used in interstate commerce. *United States Express Co. v. Minnesota,* 223 U. S. 335. (4) No state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on,

as such taxation is a burden on that commerce and amounts to regulation of it. *Lyng v. Michigan,* 135 U. S. 161. (5) When the business sought to be taxed is wholly within the state and said business is but a mere incident to interstate business, such fact furnishes no obstacle to the valid taxation by the state of the business which is entirely local. So long as regulation as to license or taxation does not refer to, and is not imposed upon, the business which is interstate, there is no interference with interstate commerce. *Osborne v. Florida,* 164 U. S. 650. It might further be asserted that, conceding the right of the state to require a company engaged in both interstate and intrastate commerce to pay a privilege tax upon its purely intrastate or local business, the state could not, in the exercise of such right, impose a burden upon the interstate commerce of such company as a condition to its right to do a local business. As was said in *United States Express Co. v. Minnesota, supra,* the difficulty in applying these principles to any given case is to distinguish between legitimate attempts to exert the taxing power of the state and those laws which, though in the guise of taxation, impose real burdens upon interstate commerce as such.

Referring now to the act, we will set out those sections which are material to this inquiry:

"Sec. 1. Any person or persons, joint stock association or corporation, wherever organized or incorporated, engaged in the business of conveying to, from or through this state, or any part thereof, money, packages, gold, silver plate or any articles by express service as distinguished from the ordinary freight lines of transportation of merchandise and property in this state, shall be deemed to be an express company." Rem. & Bal. Code, § 9161 (P. C. 433 § 73).

"Sec. 2. Every express company, as defined in section one hereof, doing business in this state, shall annually, between the first and thirtieth day of April, after passage of this act, under oath of the person constituting such company, if a person, or under oath of the president, treasurer, superintendent or chief officer in this state, of such association or corporation, if an association or corporation, make and file

with the state board of tax commissioners a statement, in such form as the board may prescribe, containing the following facts: . . . 6th. The entire receipts (including all sums earned or charged, whether actually received or not), for business done within this state, including its proportion of gross receipts for business done by such company within this state in connection with other companies." Rem. & Bal. Code, § 9162 (P. C. 433 § 75).

"Sec. 3. The state board of tax commissioners shall proceed to ascertain and determine, on or before the first Monday in July, the entire gross receipts of each of said express companies for business done within the state of Washington for the year next preceding the first day of April, and the amount so ascertained shall, in such instances, be held and deemed to be the gross receipts of such express company for business done within the state of Washington for the year under consideration." Rem. & Bal. Code, § 9163 (P. C. 433 § 77).

"Sec. 4. The board may adjourn from time to time until the business before it is finally disposed of. In case of failure or refusal of any express company to make the statement required by law, or furnish the board any information requested by it, the board shall inform itself as best it may on the matters necessary to be known in order to discharge its duty. And at any time after the meeting of the board on the first Monday in June, and before the gross receipts of any express company for business done within the state of Washington are determined, any person, company or corporation interested shall have the right, on written application, to appear before the board and be heard in the matter of such determination. After the determination of the amount of the gross receipts of any express company for business done in the state of Washington and before the certification of the state board of tax commissioners of such amount, the board may, on the application of any person, company or corporation interested, or on its own motion, review and correct its findings, in such manner as may seem to it to be just and proper." Rem. & Bal. Code, § 9164 (P. C. 433 § 79).

"Sec. 7. The state board of tax commissioners shall on the first Monday in August, annually, enter the amount of gross receipts of express companies doing business in this state, for the year then next preceding the first day of April,

as determined as provided for in section three of this act in
a book provided for that purpose. It shall be the duty of
the state treasurer, annually, to collect from each such ex-
press company, doing business in this state, a sum in the
nature of an excise or privilege tax, to be computed by tak-
ing five per centum of the amount fixed by the state board of
tax commissioners as the gross receipts of such express com-
pany for business done within the state of Washington for
the year next preceding the first day of April, as determined
and certified by the state board of tax commissioners: Pro-
vided, Nothing contained in this act shall exempt or relieve
any express company from the assessment and taxation of
their tangible property in the manner authorized and pro-
vided by law. All taxes collected under the provisions of this
act shall be credited to the state general fund. . . ."
Rem. & Bal. Code, § 9167 (P. C. 433 § 85).

We cannot find that this statute is repugnant to any of
these principles. Its whole import, as we read it, is to im-
pose a tax on local business "done within the state of Wash-
ington." Commerce that is confined and limited to "busi-
ness done within the state of Washington" has within it no
shade or element of interstate commerce. Neither is there
any attempt in the imposition of this tax on local business
to impose any burden or condition upon the right of the ex-
press companies to do an interstate business within this state.
The phrase "gross receipts of such express company for busi-
ness done within the state of Washington," to which the tax
is alone applicable, is an expression of the legislative intent
to limit this tax to business wholly within this state; that is,
business begun and ended within this state. Business begun
within this state and ended within another state, or begun in
another state and ended within this state, or transacted partly
within this state and partly within another state, which would
be one way of defining interstate commerce, is not business
done within this state, and a tax confined to the gross receipts
of the business done within this state is a tax upon intrastate
and not upon interstate commerce. Upon this point, the case
of *Pacific Express Co. v. Seibert*, 142 U. S. 339 (not cited

in the original briefs and hence not referred to in the department opinion) is so instructive that we refer to it at length. The act there reviewed, upon a contention that it was invalid as imposing a burden upon interstate commerce, is so similar to our act that, so far as their essential features are concerned, they may be said to be the same. The act is set forth in full in the opinion. It provides, in short, that every express company doing business within the state of Missouri shall annually deliver to the state auditor a statement showing the entire receipts from business done within the state, and shall pay into the treasury of the state the sum of two dollars on each one hundred dollars of such receipts. The act was attacked on various grounds, among them the one here raised. In deciding this point the court said:

"Was the business of this express company in the state of Missouri, on the receipts from which the tax in question was assessed under this act, interstate commerce? The allegation of the bill is very positive that in the prosecution of its business as an express company the complainant is engaged, in part, in the transportation of goods and other property between the states of Nebraska, Kansas, Texas and other states of the Union and the state of Missouri; and also in the business of carrying goods between different points within the limits of the state of Missouri. The question on this point, therefore, is narrowed down to the single inquiry, whether the tax complained of in any way bears upon or touches the interstate traffic of the company, or whether, on the other hand, it is confined to its *intra*-state business. We think a proper construction of the statute confines the tax which it creates to the *intra*-state business, and in no way relates to the interstate business of the company. The act in question, after defining in its first section what shall constitute an express company or what shall be deemed to be such in the sense of the act, requires such express company to file with the state auditor an annual report 'showing the entire receipts for business done *within this state* of each agent of such company doing business *in this state*,' etc., and further provides that the amount which any express company pays 'to the railroads or steamboats *within this state* for the transportation of their freight *within this state*' may be deducted from the gross re-

ceipts of the company on such business; and the act also requires the company making a statement of its receipts to include, as such, all sums earned or charged 'for the business done *within this state*,' etc. It is manifest that these provisions of the statute, so far from imposing a tax upon the receipts derived from the transportation of goods between other states and the state of Missouri, expressly limit the tax to receipts for the sums earned and charged for the *business done within the state*. This positive and oft-repeated limitation to business done within the state, that is, business begun and ended within the state, evidently intended to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. 'Business done within this state' cannot be made to mean business done between that state and other states. We, therefore, concur in the view of the court below that it was not the legislative intention, in the enactment of this statute, to impinge upon interstate commerce, or to interfere with it in any way whatever; and that the statute, when fairly construed, does not in any manner interfere with interstate commerce."

We confess our inability to distinguish the *Seibert* case from the one before us, and inasmuch as it is a decision upon a Federal question, it is decisive of these appeals. See, also, the same case, 44 Fed. 310.

The latest decision of the supreme court of the United States dealing with a like question is *Ohio River & W. R. Co. v. Dittey*, 232 U. S. 576, and subsequent to the argument herein. The state of Ohio passed an act requiring each railroad doing business within that state to file a statement setting forth its entire gross earnings derived from business done within that state, excluding therefrom all earnings derived wholly from interstate business, and providing that such gross earnings should be charged with an excise tax of four per cent for the privilege of carrying on its intrastate business. It was insisted, on attacking the act, that, as applied to railroads, it was a burden upon interstate commerce, this contention being raised upon the provision of the act for ascertaining the earnings of the railroads "from whatever source

derived, for business done within this state, excluding therefrom all earnings derived wholly from interstate business," the argument being that this has the effect of imposing a tax with respect to the gross receipts from foreign commerce because such commerce is not expressly excepted. This contention was overruled, the court holding that the intent of the act was plain, to measure the tax only upon earnings from intrastate business, and on this view the act was sustained. The language of the Ohio act, in "excluding therefrom all earnings derived wholly from interstate business" is no clearer enunciation of the intent of the act to subject intrastate business to the payment of the tax than is the language of our act in measuring the tax upon "business done within the state of Washington," since interstate commerce is in no sense business done within the state of Washington. Nor can it be classified as such. The two expressions convey an identical meaning—to limit the operation of each act to purely local business, and to exclude from its operation any and all business that could be included within any definition of interstate commerce.

The respondents, while citing a number of other cases, relied principally upon *Pullman Co. v. Adams*, 189 U. S. 420, and *Allen v. Pullman's Palace Car Co.*, 191 U. S. 171, as sustaining their contention that the tax created by this statute imposed a burden upon interstate commerce; and since these cases were cited by the department as sustaining the conclusion reached by it, we have given them careful consideration, and such consideration leads us to now say we can find nothing in either of those cases which would render these taxes invalid. The *Adams* case may best be referred to as read by the court itself in *Western Union Tel. Co. v. Kansas ex rel. Attorney General*, 216 U. S. 1:

"As to *Pullman Co. v. Adams*, 189 U. S. 420, 429, we perceive nothing in the judgment in that case that conflicts with what is herein said. That case involved the validity of a tax of a certain amount imposed by Mississippi on *each*

sleeping and palace car company carrying passengers 'from one point to another *within the state*,' and so many cents per mile 'for each mile of railroad track over which the company runs its cars *in this state*.' It was contended that this tax was an interference with commerce among the states. It is stated in the opinion that the sleeping cars of the Pullman Company, an Illinois corporation, 'were carried by various railroad companies, and all of them were carried into the state from another state, or out of the state to another state or both. But such cars in their passage also carried passengers from point to point within the state, and a specific fare was collected by the servants of the Pullman Company.' It was contended by the company that the state constitution made it a common carrier, and, in effect, compelled it to assume the burden of carrying local passengers, although its receipts from purely local business were less than the expenses incurred in carrying it on. But the state supreme court held that view of the state constitution to be fallacious. And this court said: 'If the clause of the state constitution referred to were held to impose the obligation supposed and to be valid, we assume, without discussion, that the tax would be invalid. *For then it would seem to be true that the state constitution and the statute combined would impose a burden on commerce between the states analogous to that which was held bad in Crutcher v. Kentucky,* 141 U. S. 47. On the other hand if the Pullman Company, whether called a common carrier or not, had the right to choose between what points it would carry, and therefore to give up the carriage of passengers from one point to another within the state, the case is governed by *Osborne v. Florida*, 164 U. S. 650. The company cannot complain of being taxed for the privilege of doing a local business which it is free to renounce. Both parties agree that the tax is a privilege tax. As the validity of the tax is thus bound up with the effect of the section of the state constitution, we think that the Pullman Company was entitled to know how it stood under the latter, and that a judgment against it could not be justified by reasoning which leaves that point obscure. We are somewhat embarrassed in dealing with the case, because we are not quite certain whether we rightly interpret the intimations upon the subject in the judgment under review. If the constitution of Mississippi should be read as imposing an obligation to take

local passengers, the question for us might be which, if not both, the clause of the constitution or the tax act is invalid. But we assume that the opinion of the supreme court of Mississippi intends to meet the difficulty frankly, and when it says that the argument against the tax drawn from the above interpretation of the constitution is fallacious, we take it as meaning that no such interpretation will be attempted in the future, and we take it so the more readily that we can see no ground for a different view. If we are right in our understanding the judgment of the supreme court was correct for the reason sufficiently stated above.' So that what was actually decided in the *Adams* case was that the company was under no obligation to take local passengers, but if it chose to do that kind of business the privilege for doing it could be taxed by the state."

See, also, this same case (*Pullman Co. v. Adams*), 78 Miss. 814, 30 South. 757, 84 Am. St. 647. In the *Allen* case, it was held that, while the state may not impose a tax which is in any way a burden upon interstate commerce, it may impose a privilege tax upon a corporation engaged in interstate commerce, for carrying on that part of its business which is wholly within the taxing state, and which tax does not affect its interstate business or its right to carry it on in that state. Two statutes were involved. The first required each sleeping car company doing business in the state of Tennessee to pay an annual tax of $500 on each of its cars for the privilege of doing business in that state. The act as interpreted by the court applied to cars running through the state as well as those whose operation was wholly intrastate, and the privilege tax was to be paid upon all cars, regardless of whether they were used in interstate traffic or that which was wholly within the borders of the state. For this reason, taxes exacted under this act were held void as an attempt to impose a burden upon interstate commerce. The second act provided that each sleeping car company doing business within the state "for one or more passengers taken up at one point in this state and delivered at another point in this state and transported wholly within the state, per annum

$3,000." This act was sustained as applying to intrastate business, and the *Adams* case was followed to the effect that the Pullman Company could not complain at being taxed for the privilege of doing a local business which it was free to renounce, since it could continue its interstate business, declining local business, and thus escape the attempt to tax it upon business wholly within the state.

Other cases relied upon by the respondent are *Crutcher v. Kentucky*, 141 U. S. 47; *Western Union Tel. Co. v. Kansas ex rel. Attorney General*, 216 U. S. 1; *Galveston, H. & S. A. R. Co. v. Texas*, 210 U. S. 217; *United States Express Co. v. Minnesota*, 223 U. S. 335; *Oklahoma v. Wells Fargo & Co.*, 223 U. S. 298. The Kentucky case involved an act providing that no agent of a foreign express company should carry on business in that state without first obtaining a license from the state, and that, preliminary thereto, he should satisfy the auditor of the state that the company he represented was possessed of an actual capital of at least $150,000. Failing these requirements, he was subject to a fine. The court held the provisions of this act relating to license and capital stock imposed conditions on interstate commerce and were clearly a burden and restriction upon such commerce, and hence could not be sustained, adding:

"But taxes or license fees in good faith imposed exclusively on express business carried on wholly within the state would be open to no such objection."

In the light of what we have said as to the provision of the act of 1907 applying only to business done within this state, we take this case as an authority in support of our position rather than against it. In the Kansas case, the court reviewed a statute providing that, before any foreign corporation, even one engaged in interstate commerce, could do a local business, it should pay to the state treasurer for the benefit of the permanent school fund a charter fee of one-tenth of one per cent of its authorized capital upon the first $100,000, and a smaller percentage upon larger issues of

capital stock. The Western Union Telegraph Company refused to pay the required fee, and the state brought a suit in one of its own courts and obtained a decree ousting the company from doing any local business. A writ of error being granted, it was held that this fee was a tax affecting both the interstate and intrastate business of the company without discrimination, and not a tax for the privilege of doing a local business in the state, and hence void as a burden upon interstate commerce. The vice of this statute, as found by the majority of the court, was that it made the doing of local business conditional upon paying a given per cent on the entire capitalization of the corporation, which manifestly would represent the value of all its business within and without the state. The opinion, however, reiterates the holding in the Kentucky case, that taxes imposed exclusively on an express business carried on wholly within the state would be open to no such objection, and the rule announced in *Osborne v. Florida*, 164 U. S. 650, that a tax directed against local business only under which a corporation might conduct its interstate business without paying the slightest heed to the act, was valid as against the plea that it was a burden upon interstate commerce. Four of the justices joined in a dissent, holding that the tax was valid upon the ground that a state may tax a foreign corporation seeking to do business wholly within the state, and that the right to tax foreign corporations in respect to business done wholly within the state is not taken away by the fact that they also are engaged there in commerce among the states. As we understand the majority opinion, it was not intended to depart from the above rule upon which the dissent was based, the majority holding the opinion that there was no conflict between the views they expressed and the cases upon which the dissent was grounded. So that, so far as the point here involved is concerned, both the majority and minority opinions uphold a tax imposed upon intrastate business alone.

The Texas case involved the validity of a statute imposing

an annual tax equal to one per cent of its gross receipts on each railroad lying wholly within that state. The railroads there concerned lay wholly within Texas and connected with other lines, and a part, and in some instances much the larger part, of their gross receipts were derived from the carriage of passengers and freight coming from or destined to points without the state. For this reason, the tax was held to be a burden upon interstate commerce, so far as it was based upon or was measured by receipts derived from interstate transportation.

The Minnesota case involved a statute taxing express companies six per cent upon gross receipts for business done within the state. The action was brought by the state to recover certain items which it was claimed the express companies had omitted from their return of gross receipts, and which were properly the subject of taxation under the statute. These omitted items included, (1) receipts from business begun and ending in the state but which passed out of the state in transit; (2) receipts from shipments originating in the state but destined to points outside the state; (3) shipments originating outside the state but destined to points within the state; (4) shipments originating outside the state and destined to a point outside the state but passing through the state of Minnesota in transit. Taxes were not claimed upon shipments of express matter in the classes named where the same express company performed the transportation both within and without the state. As to the shipments in class one, it was held by the state supreme court, upon the authority of *Lehigh Valley R. Co. v. Pennsylvania*, 145 U. S. 192, that nine per cent of the taxes claimed on this class of earnings should be deducted from the amount of recovery allowed in the court of original jurisdiction, since it was disclosed that only ninety-one per cent of the mileage was within the state of Minnesota. This view was sustained by the supreme court of the United States upon the authority of the cited

11—80 WASH.

case. As to the other classes, the supreme court of Minnesota held that it was the intention of the legislature in the statute under consideration to include the earnings from these classes within the state in the gross receipts upon which the tax was based. This construction of the statute was held to be binding upon the supreme court of the United States. The state supreme court further held that the tax was a property tax measured by the gross earnings within the state, which was held to include the earnings of classes two, three, and four, and that the statute was part of a system long in force in Minnesota, based upon the authority of the state constitution, and was intended to afford a means of valuing the property of express companies within the state. Of this construction, the supreme court of the United States says:

"While the determination that the tax is a property tax measured by gross receipts is not binding upon this court, we are not prepared to say that this conclusion is not well founded, in view of the provisions and purposes of the law." *United States Express Co. v. Minnesota*, 223 U. S. p. 346.

And the statute was sustained as falling "within that class where there has been an exercise in good faith of a legitimate taxing power, the measure of which taxation is in part the proceeds of interstate commerce, which could not in itself be taxed, and does not fall within that class of statutes uniformly condemned in this court, which show a manifest attempt to burden the conduct of interstate commerce." The Oklahoma case involved a statute similar to that held bad in the Texas case, and for the reasons there given was held invalid.

We have entered upon this review of these cases for the reason that respondents insist they support the contention that the statute in question imposes a burden upon interstate commerce, which view seems to have been adopted by the department. As we now view these decisions, in so far as they cast light upon the problem before us, they support, rather than antagonize, our position. Additional supporting cases

are *Telegraph Co. v. Texas*, 105 U. S. 460; *Ratterman v. Western Union Tel. Co.*, 127 U. S. 411; *Western Union Tel. Co. v. Alabama State Board of Assessment*, 132 U. S. 472; *Maine v. Grand Trunk R. Co.*, 142 U. S. 217; *Ficklen v. Shelby County Taxing District*, 145 U. S. 1; *Postal Tel. Cable Co. v. Charleston*, 153 U. S. 692. An examination of the Federal cases shows, as stated in *Baltic Mining Co. v. Massachusetts*, 231 U. S. 68, that they have been decided upon the principle that taxes of this character should be invalidated only where the necessary effect is to burden interstate commerce or tax property beyond the jurisdiction of the state.

The last contention to be noticed is that, inasmuch as the express companies have a right to come into this state for the purpose of engaging in interstate commerce, and the state is powerless under the commerce clause of the Federal constitution to annex conditions to or impose burdens upon the exercise of that right, it follows that an express company entering this state and engaging in interstate commerce is thereby made a common carrier of intrastate commerce, and is not at liberty to abandon its intrastate business, and that, therefore, the doctrine announced in *Osborne v. Florida, Pullman Co. v. Adams, Allen v. Pullman's Palace Car Co.*, and *Western Union Tel. Co. v. Kansas ex rel. Attorney General*, that foreign corporations coming into a state for the purpose of transacting an interstate business, whether called common carriers or not, had the right to choose between what points they would do business, and cannot, therefore, complain of being taxed for the privilege of doing a local business which they are free to renounce, does not apply in this state, because of our constitutional and statutory provisions. We accept the premise, but we deny the conclusion. No reason is pointed out why it follows that, because a foreign corporation has a right to engage in interstate business within this state, a right to which the state is powerless to attach conditions, such corporation is thereby made a common carrier of

intrastate business, and is powerless to withdraw from such business. The only section of the constitution referred to is § 13, art. 12, declaring all railroad, canal and other transportation companies to be common carriers and subject to legislative control, and other sections prohibiting discrimination in privileges and transportation charges, and that part of the public service commission law of 1911 making express companies common carriers. To say that these citations support respondents' contention is to read into them something we have not found, and which respondents have failed to point out. We therefore deny respondents' assertion, "that in the constitution and laws of this state a company which enters for the purpose of engaging in interstate commerce is thereby made a common carrier of intrastate commerce." It is equally fallacious if it is meant by this assertion that, as a condition for engaging in interstate commerce, the state requires the corporation to also engage in intrastate commerce. Such a plea violates a rule concerning which there is now no dispute, that the state can impose no burden upon interstate commerce nor exact any condition upon which foreign corporations may engage in such business within this state. If the constitution should be read as imposing an obligation upon corporations doing an interstate business to also engage in a local business, then, as said in the *Adams* case, "the question for us might be which, if not both, the clause of the constitution or the tax act, is invalid."

Respondents make a general reference to the public service commission law of 1911 as supporting their contentions. It may be answered that no provision of that law could operate as a regulation upon interstate commerce. All that it seeks to do, and all that the state has power to do, is to impose regulations upon local business, and while the state cannot say to the foreign corporation, "We will annex certain conditions with which you must comply before you can do an interstate business in or through this state," it can say to such corporation, "If you choose to do a business which is purely local in

its character and which has attached to it no elements of interstate commerce, you must submit that business to the regulation and control of the laws of this state." To go further than this, the state has not attempted, or if it has, its attempt is vain. So far as any constitutional provision is concerned, we find no essential difference between our constitution and that of the state of Mississippi referred to in the *Adams* case. Our constitution provides, in § 13, art. 12, that "all railroad, canal and other transportation companies are declared to be common carriers and subject to legislative control." Section 195 of the constitution of Mississippi reads: "Express, telegraph, telephone, and sleeping car companies are declared common carriers in their respective lines of business, and subject to liability as such." If, under this provision of the Mississippi constitution, nothing could be found compelling express companies to do a local business, we can find nothing in the language of our constitution which adds any such power. The whole theory of state control of public service corporations is based upon the doctrine, as expressed in *Munn v. Illinois*, 94 U. S. 113, that, when one devotes his property to a public use, he grants to the public an interest in that use, and must submit to be controlled by the public for the public good to the extent of the interest he has created. "He may withdraw his grant by discontinuing the use, but so long as he maintains the use, he must submit to control." So here the express company may withdraw its property from any local use and discontinue such use; but so long as it continues in such use, it must submit to state control and regulation.

Based on these conclusions, we overrule the department opinion, and the judgment in each case is reversed, and the cases remanded with instructions to proceed in accordance with the views here expressed.

PARKER, MOUNT, and FULLERTON, JJ., concur.

ELLIS, J. (concurring)—I signed the original opinion in this case, but a consideration of the decisions of the supreme court of the United States in *Pacific Express Co. v. Seibert*, 142 U. S. 339, cited for the first time on the rehearing, and in *Ohio River & W. R. Co. v. Dittey*, handed down by that court subsequent to the argument of this case, convinces me that the department opinion was wrong. Considering those decisions in connection with the fact, overlooked on the first hearing, that the declaration of our constitution, § 13, article 12, that all railroad, canal and other transportation companies are common carriers and subject to legislative control, is no broader than the cognate clause of the constitution of Mississippi, which has been held by both the supreme court of that state and the supreme court of the United States as not necessarily imposing upon an interstate carrier the duty of doing an intrastate business, I am constrained to concur in the foregoing opinion.

CROW, C. J. and MAIN, J., concur with ELLIS, J.

GOSE, J. (dissenting)—The majority of the court have overruled the view expressed upon the former hearing. *State v. Northern Express Co.*, 76 Wash. 636, 136 Pac. 1160. The statute under review (Laws 1907, p. 79; Rem. & Bal. Code, §§ 9161-9168; P. C. 433 §§ 73-87), is held to be a valid exercise of the legislative power, upon two grounds: (1) That the privilege tax extends only to business begun and ended within the state, and (2) that express companies engaged in interstate business are at liberty to take or renounce intrastate business.

In respect to the first ground, the taxing statute, § 1 (Id., § 9161), provides that any corporation, wherever organized or incorporated, "engaged in the business of conveying to, from or through this state," money, etc., by express service, shall be deemed to be an express company. Section 2 (Id., § 9162), provides that every such company shall, at a time designated in the act, "make and file with the

state board of tax commissioners" a statement containing, among other things, "the entire receipts . . . for business done within this state, including its proportion of gross receipts for business done by such company within this state in connection with other companies." Other sections of the statute provide that the state board of tax commissioners shall, from this statement, ascertain and determine the gross receipts of express companies for business done within the state.

I recognize at the outset that, if the statute may fairly and reasonably be interpreted in two ways, one of which will render it constitutional and the other unconstitutional, the former construction must be adopted. I think the very language of the statute is such as to show the intention of the legislature to fasten the tax upon interstate commerce at the state line. If it was intended, as the majority opinion says, to apply only to business begun and ended within this state, why all the verbiage in the statute, and why the provision "including its proportion of gross receipts for business done by such company within this state in connection with other companies," and why does it refer to corporations engaged in the business of "conveying *to*, *from* or through this state?" If the legislature had intended to accomplish only what the majority opinion says, that intention could have been expressed in a few simple words. If the question were before us as to the proper interpretation of the act, in the absence of any Federal restriction, this court would, I think, be unanimous in the view that the legislature intended to make the tax cover all business done within the boundaries of the state, whether interstate or intrastate. The very language of the act shows that it was intended to apply to express companies engaged in an interstate business. Indeed, so far as we are advised, there were and are no other companies. The act was intended to reach business as it then was. I think a fair and reasonable interpretation of the act compels the view that the legislature intended to fasten the

tax upon interstate commerce at the state line, and that it did not intend to limit it to business begun and ended within the state. I am aware that a different view was taken in *Pacific Express Co. v. Seibert*, 142 U. S. 339. It does not appear from that opinion, however, that the state court had theretofore construed the statute. A reading of the opinion will disclose that the court gives no heed to the words of the statute "conveying *to, from,* or through this state . . . including its proportion of gross receipts for business done by this company within this state in connection with other companies."

But, assuming that the *Seibert* case may be harmonized with the later cases of *Galveston, H. & S. A. R. Co. v. Texas*, 210 U. S. 217, and *Meyer, Auditor of Oklahoma v. Wells, Fargo & Co.*, 223 U. S. 298, and that it correctly construes the statute as having reference only to business beginning and ending in the state, we are then confronted with the question whether, under the constitution and the statutes of the state, an express company engaged in interstate commerce may carry its wares through the state and be free to take or renounce all state business. The majority opinion refers only to § 13, art. 12, of our constitution. It passes § 15, art. 12, without mention. That section provides that transportation companies shall not discriminate between places and persons or in the facilities afforded, upon the same class of freight or packages, within the state "or coming from or going to any other state." Nor does the majority opinion mention § 7, art. 12, of the constitution, or Rem. & Bal. Code, § 3720 (P. C. 405 § 359), both of which provide that a foreign corporation shall not be permitted to transact business within the state on more favorable conditions than domestic corporations. The public service commission law (Laws 1911, p. 538; 3 Rem. & Bal. Code, § 8626-1 *et seq.*) provides that the term "common carrier" includes "express companies." I refer to this only for the purpose of showing the intention of the law. It is, of course,

true that a mere legislative declaration could not make a common carrier out of a business that was not in fact a common carrier. It is admitted, however, that express companies are common carriers. Section 9, p. 546 (Id., § 8626-9), of the public service commission act provides that "every common carrier" shall furnish adequate and sufficient service and facilities to enable it to promptly, expeditiously, safely and properly handle all persons or property *"offered to or received by it* for transportation," etc. Section 10, p. 547 (Id., § 8626-10), provides: "Every common carrier shall under reasonable rules and regulations promptly and expeditiously receive, transport and deliver all persons or property *offered to* or received by it for transportation." The italics are ours. Section 53, p. 571 (Id., § 8626-53), empowers the public service commission to require a common carrier to accommodate its business and facilities to the requirements of the law, to the end that it shall without discrimination furnish the public a reasonably adequate and safe service at a reasonable price. As we remarked in the former opinion, it is significant that these duties, restrictions, and regulations are made to specifically apply to every common carrier. They are all placed in the same category. The legislature was addressing itself to a condition, not a theory. It was well known, at the time of the adoption of the constitution and at the time of the adoption of the public service commission law, that practically every express company was a foreign corporation engaged in interstate commerce. The law was addressed to such corporations.

With all due respect to my brothers, I cannot free my mind from the conviction that the majority opinion has misconstrued the tax statute and torn the heart out of both the public service commission statute and the constitution. It is true that it gets the tax; but it is also true that it may be the forerunner of evils infinitely greater than would be the loss of the tax. If the public service commission should fix a rate for express companies for intrastate business below what such

companies would consider adequate, and if in consequence they should elect to renounce all intrastate business, the loss to the fruit, dairying, and other industries of the state in respect to perishable products would be staggering. If I had had a free hand in writing the former opinion, untrammeled by the later Federal decisions, I would have had no difficulty in reaching the conclusion that the act under review only indirectly affected interstate commerce, and hence was not unconstitutional. That view would have accorded with the conclusion reached by Mr. Justice Harlan, the chief justice and two associate justices, who dissented in the *Galveston* case. To avoid the effect of the *Galveston* case, we were compelled to hold that the taxing statute is limited to business begun and ended within the state. I could not reach that view. To avoid the effect of the *Adams* case, we were required to reach the conclusion that interstate carriers could carry their goods through our state, exercise the sovereign powers of the state if they desired in the exercise of the right of eminent domain, and yet be perfectly free to pass up all state business. I could not so construe our constitution or our public service statute. The late case of *Ohio River & W. R. Co. v. Dittey*, 232 U. S. 576, in my opinion throws no light on the question. The statute there under review had reference only to intrastate business, and by its very terms excluded all earnings derived from interstate business. The chance remark in *Munn v. Illinois*, 94 U. S. 113, quoted with approval in the majority opinion, has many times been pressed upon this court by railroad companies, but I believe that we have hitherto declined to sanction it. I fear that it will in the future cause us serious embarrassment.

For the reasons stated, I am constrained to dissent from the view expressed in the majority opinion.

CHADWICK, J. (dissenting)—The theory upon which the opinion of the majority of the court is made to rest is that an express company is free to renounce intrastate business

within the state of Washington. It has treated the question as one of substantive law, and applied the opinions of the Supreme Court of the United States, which were proper enough in the cases there decided, but which have no application here. This case is controlled entirely by the constitution and the statutes of the state of Washington. An express company has been declared by the people of this state to be a common carrier. No reservation is made in the constitution or in the law making those instruments applicable to companies doing a local business. In the interpretation of our constitution and statutes, one of the most valuable guides for a court to follow is to take notice of the conditions existing at the time the applicable principle or statute was adopted—to exercise, as it were, its common sense. Will any one contend for one minute that the people of this state or the legislature had in mind, when they or it referred to express companies, any company other than those with which the public is familiar and which are engaged in interstate commerce and were and are doing an intrastate business within the state of Washington? Surely the legislature had such companies in mind when the public utilities act was passed. There were no other companies to which the law could apply. It is, therefore, made compulsory upon the interstate express companies to do a local business. In the light of the history of the act, it seems to me that it is a great wrong to hold that companies which have been made amenable to the agents of the state by a positive statute may decline to do that which is a benefit to the whole people and that which they should be required to do. If the express companies doing business in this state should accept the law as this court has laid it down, and decline to receive local business from one point to another, it would result in the loss of millions of dollars to the fruit and dairy interests of the state of Washington. And yet this is the condition in which this court has left the people of this state. It has denied to companies doing an in-

terstate business the character of local concerns, unless they
voluntarily assume that character; whereas, it was the plain
intent of the legislature to make them common carriers,
bound to accept the business of the citizens of the state and
to be amenable to its laws.  I regret that this question did not
come to the court upon the application of some shipper at
North Yakima, Wenatchee, or other express shipping point,
to compel the company to accept an intrastate shipment.
Had it been so, I feel that the court would have been able to
see the case from a different, and as it seems to me, the true
angle.  I repeat, that however apt the decisions relied on by
the majority may have been in the cases wherein they were
pronounced, they have no application here because of the sec-
tions of the statute to which Judge Gose has referred, and
whose argument is not met by the majority opinion of the
court.