THE PEOPLE, PETITIONER, *v.* CENTRAL FORTUNA, RESPONDENT.

APPLICATION for a Writ of *Mandamus* Commanding the Respondent to Furnish to the Treasurer of Porto Rico a Certificate of Its Volume of Business.

No. 143.—Decided February 18, 1915.

Motion to reconsider decided April 16, 1915.

LICENSE TAX—INTRATERRITORIAL RAILROAD—TAX AS CONDITION PRECEDENT TO DOING BUSINESS—RECEIPTS FROM BUSINESS IN PORTO RICO—RECEIPTS FROM CARRYING BUSINESS OUTSIDE OF PORTO RICO—INTERSTATE COMMERCE—FOREIGN CORPORATION—DOMESTIC CORPORATION—CONSTITUTION—ORGANIC ACT.— The defendant in this case, Central Fortuna, is now doing a railroad business in Porto Rico and has been doing such business prior to and since January 1, 1914. Pursuant to Act No. 134 of August 12, 1913, the Treasurer of Porto Rico requested the said corporation to furnish him with a certificate of its total gross receipts from the business operations transacted during the preceding year. This the respondent refused to do, alleging in its answer to the petition for a writ of *mandamus* that as a common carrier it is engaged in interstate commerce, *i. e.*, commerce between the various States of the United States and Porto Rico, and that the said Act No. 134, which imposes a license tax on business in Porto Rico, is a regulation of interstate commerce and a burden thereon, wherefore it is contrary to the Constitution of the United States and the Organic Act. *Held:*

1. A state may exact a tax from a foreign corporation measured by its gross receipts, but a license tax cannot be exacted as a condition precedent to doing business when the burden falls on business which is necessarily and mainly outside of the state.

2. Anything that a railroad receives from its transportation within Porto Rico is necessarily, owing to the physical conditions, for business done within Porto Rico; and Act No. 134 of 1913, establishing a new system of license taxes, contemplates all and any income from the railroad business in Porto Rico, whether or not the said income is derived partially from packages ultimately destined for shipment to New York.

3. The Central Fortuna does a business passing over and depending exclusively upon the soil of Porto Rico, and no part of its railroad business is done outside of Porto Rico. The receipts for the railroad business done in Porto Rico are essentially and easily severable from the receipts for transportation outside of the island, therefore the tax sought to be imposed, although in the form of a license and a condition precedent to doing business, is regulative of a railroad business as such and is not a tax on interstate receipts.

4. No railroad company in Porto Rico can escape this form of tax and its regulation merely because it is a foreign corporation or transports packages ultimately destined for shipment to the United States; for the act does not seek to tax interstate packages, but to impose indiscriminately a graded

license tax measured by its gross receipts on practically every kind of business carried on in Porto Rico.

5. The pleadings only set forth that the Central Fortuna ''is engaged in interstate commerce,'' and while the Central Fortuna might be doing an express or forwarding business independently of its railroad business and claim to be an interstate carrier, under the conditions in Porto Rico, even to say that the railroad is engaged in interstate commerce would be to state a conclusion of law rather than a fact; moreover, the burden was on the respondent to show not only that its railroad business was a part of the interstate business, but also to show that this form of taxation was a burden on such interstate business.

6. The fact that goods are transported from the continent to the island in steamers and then transferred by railroad to some other point in the island, does not convert a business, done by a railroad in Porto Rico into commerce between the States.

### ON RECONSIDERATION.

RAILROADS—INTERSTATE COMMERCE—JUDICIAL NOTICE.—This court is bound to take judicial notice of the fact that the business of a railroad as such, which is wholly located in Porto Rico, is not interstate commerce.

ID.—LOCAL BUSINESS.—When the entire business of a railroad is conducted within Porto Rico the receipts therefrom are the proceeds of a local business.

INTERSTATE COMMERCE—LICENSE TAXES.—Act No. 134 of 1913 does not levy a tax on the instrumentality of interstate commerce, therefore no burden or prohibition is laid upon such commerce and there is no obstacle to the free conduct thereof.

The facts are stated in the opinion.

*Messrs. Wolcott H. Pitkin, Jr., Attorney General,* and *Robert Szold* for the petitioner.

*Mr. Francis E. Neagle* for the respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

The only question raised in this case and insisted upon by the parties, and which was not presented to the court in the case of *The People* v. *Neagle,* 21 P. R. R., 339, is whether Act No. 134 of August 12, 1913, is contrary to the Constitution of the United States and to the Organic Act, in that it imposes a license tax as a condition precedent to the right of the respondent to engage in commerce, the respondent maintaining in his brief that such commerce, or part of it at least, is interstate commerce and that Act No. 134 is, therefore, a regulation of interstate commerce and a burden thereon; and, furthermore, is an attempt to legislate upon

a subject already covered by Congress in the Interstate Commerce Act.

It was conceded by the Government by stipulation that all allegations of fact in the return of the respondent in this case should be taken as true.

The petitioner alleged, among other things, that the "Central Fortuna is now doing a railroad business in Porto Rico and has been doing such business prior to and since January 1, 1914," and the answer of the respondent in reply thereto was as follows:

"2. It admits each and every allegation contained in the paragraph marked 'Second' of the petition herein, and alleges that it is engaged as a common carrier in interstate commerce; that is, commerce between the various States of the United States and Porto Rico."

The issues of law in this case arise from the paragraph quoted and from the stipulation.

The Government first maintains that the statute in this case purports to tax only the intraterritorial railroad business, and, consequently, there is no question of interstate commerce involved. However, the parties have presented an aspect of this question which is very different from our own view of the matter, and which aspect we shall first discuss.

The pertinent sections of Act No. 134 are as follows:

"Section 1.—That on and after the 1st day of July, 1913, in addition to all other taxes now authorized by law, the Treasurer of Porto Rico shall levy and collect from every person, firm, association, partnership, corporation or other form of commercial or industrial organization, and any branch or branches thereof, in accordance with the rates specified, the license taxes hereinafter enumerated; * * *.

"Section 2.—That the business or industry, and any branch or branches thereof, engaged in by any person, firm, association, partnership, corporation, etc., subject to the payment of license taxes as herein provided, shall be classified by the Treasurer of Porto Rico into one of the classes hereinafter mentioned, according to its relative importance as measured by the volume of business transacted

within Porto Rico irrespective of the net gain or profit derived therefrom, and as compared with other similar businesses or industries throughout Porto Rico.

"Section 3.—That every person, firm, association, partnership, corporation, etc., conducting any of the businesses or industries herein specified, shall pay quarterly the license tax herein provided, in accordance with the classification to which the preceding section refers, and no person, firm, association, partnership or corporation, etc., shall engage in or carry on any business, trade or industry described in this Act until or unless the corresponding license tax has been paid in the manner and in the amount hereinafter provided.

"Section 10.—*   *   *.

"Every person, firm, partnership, association, corporation, etc., conducting or proposing to conduct any business or industry for which a license is required by the provisions of this Act shall furnish under oath or affirmation to the Treasurer of Porto Rico, upon request from said Treasurer, a certificate in such form as he may by regulations prescribe, setting forth the name or style of said business or industry, the place where such business or industry is or is to be carried on, and the volume of business transacted within Porto Rico. The term 'volume of business' as used in this section and in section 2 of this Act shall be held to mean gross sales only, as distinguished from purchases and sales, in those businesses or industries which are conducted chiefly for the purpose of selling merchandise or the products of a factory or other industry. The Treasurer of Porto Rico, the Chief of the Bureau of Internal Revenue and the several agents or representatives of the said bureau are hereby authorized to administer the oath or affirmation required in this section.

"Any person, firm, partnership, association, corporation, etc., who or which shall wilfully fail to furnish to the Treasurer of Porto Rico such certificate or who shall knowingly make a false statement therein or who shall violate any of the provisions of this Act may be complained against by the Treasurer of Porto Rico in a court of competent jurisdiction and shall, upon conviction, be guilty of misdemeanor and shall be punished by a fine not exceeding five hundred (500) dollars."

The *mandamus* was to obtain the foregoing certificate, the treasurer having asked the defendant corporation that the total gross income from the business operations of this railroad transacted within Porto Rico during the preceding year

be certified. The enumeration contained in section 12 of said Act No. 134 is also pertinent.

There can be no doubt, and it is practically conceded by the respondent, that the State may exact a tax from foreign corporations measured by their gross receipts, and the cases support this view. *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S., 217; *Adams Express Co.* v. *Ohio,* 165 U. S., 220; *United States Express Co.* v. *Minnesota,* 223 U. S., 335; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S., 86. But what the respondent maintains is that no State or Territory may impose a license tax on a corporation a part of whose receipts is from interstate commerce, when the statute requires such corporation or concern to take out a license and pay such license fees as a condition precedent to carrying on interstate commerce, the statute of Porto Rico providing that "no person, firm, association, partnership, or corporation shall engage or carry on the trade or industry described in this Act until or unless the corresponding license tax has been paid."

The Government in its brief, for the purposes of argument at least, concedes that the Central Fortuna is transporting interstate packages from points within Porto Rico to points to and within the United States; but the Government maintains that the receipts from the so-called interstate packages are separable from the purely insular business. In other words, if a railroad was receiving money for packages destined from Caguas to San Juan and was also receiving money for packages from Caguas with the ultimate destination of New York, then receipts from a local business between Caguas and San Juan could be distinguished from the receipts for packages from Caguas ultimately destined for New York. The Government points out that the Supreme Court of the United States would very probably abide by the construction in this regard put upon the statute by this court, and for that very reason we think it is due to the respondent to say that we cannot follow the Government's

contention in this regard. The tax is one measured by the receipts from railroad business done in Porto Rico. Section 2 of the Act makes it the duty of the Treasurer of Porto Rico to classify a business or industry "according to its relative importance as measured by the volume of business transacted within Porto Rico." Anything that a railroad receives from its transportation within Porto Rico is necessarily business done within Porto Rico and is a railroad business done within Porto Rico. We think that the statute contemplates all and any income from the railroad business in Porto Rico, whether or not those receipts are partially derived from packages ultimately destined for shipment to New York. If the administrative officers of the Government rely alone on this proposition of separability, the *mandamus* in this case ought not to take a permanent form.

The cases cited by the Government (*Osborne* v. *Florida*, 164 U. S., 650; *State* v. *Fleming*, 70 Neb., 523; *Northern Pacific Ry. Co.* v. *Barnes*, 2 N. D., 551,) were all cases of interstate carriers where the state court said that the interstate business might be distinguished from the intrastate business. There was no attempt to distinguish the local carriage of interstate packages from the local carriage of intrastate packages. The cases of *Armour Packing Co.* v. *Lacy*, 200 U. S., 226, and *Kehrer* v. *Stewart*, 197 U. S., 67, were simply cases where the packing-house business within the state was distinguished from the packing-house business without the state, the corporation doing an interstate business. We agree with the respondent that the receipts from any part of the railroad business are necessarily received within Porto Rico.

However, as we have pointed out, the Government also maintains that this tax is imposed for the doing of a local railroad business in Porto Rico. If the company has no receipts from the transportation of packages from points within Porto Rico to the coast of Porto Rico, in other words, if it receives nothing *qua* railroad for the transportation of its

alleged interstate packages, then, of course, it has no receipts from such alleged interstate business, and its receipts are solely and exclusively from railroad business on intrainsular packages. If, on the other hand, a part of its receipts arise from the transportation of interstate packages over its railroad, then the physical condition of things in Porto Rico makes it possible for the Central Fortuna to segregate the receipts for the railroad business from the receipts for transportation from the shores of Porto Rico to points to or within the United States.

It is to be noticed that in the principal cases cited by the respondent—*Leloup* v. *Port of Mobile,* 127 U. S., 640; *Crutcher* v. *Kentucky,* 141 U. S., 47; *The Postal Telegraph Cable Co.* v. *Adams,* 155 U. S., 688, and *Adams Express Co.* v. *New York,* 232, U. S., 14,—in which the Supreme Court held that a license tax might not be exacted as a condition precedent to the doing of business, that in each one of these cases the taxation sought to be thus imposed fell mainly and in its essential nature on interstate commerce. Indeed, as is frequently pointed out by the Supreme Court of the United States, the reason why taxes of this nature are not sustained is because the burden falls on business that is necessarily outside of the state, and mainly so. The telegraph companies and express companies involved were really interstate carriers. A railroad business in Porto Rico is necessarily entirely within the island. No part of such railroad business can be done outside of the island. The railroad may carry packages intended for final shipment to points within the United States, but the railroad business is not done outside of Porto Rico. We think the respondent in its brief confounds the railroad business that it does with a possible express business or forwarding business that it may have in mind; but, nevertheless, the doubt that arises in this case is whether a tax on the railroad business of the Central Fortuna is a tax on interstate commerce by reason

of the fact, as maintained by the respondent, that such railroad company carries interstate packages.

The case of the *Western Union Tel. Co.* v. *Kansas,* 216 U. S., 1, restates the holding that the rule that a State may exclude foreign corporations from its limits or impose such terms and conditions on their doing business therein as it deems consistent with its public policy, does not apply to foreign corporations engaged in interstate commerce; and a requirement that a telegraph company pay a given per cent on all its capital by way of a license tax or fee, where such capital represents all its business interests and property within and outside of the State, operated as a burden and tax on the interstate business of the company in violation of the commerce clause of the Constitution, as well as a tax on its property beyond the limits of the State, which the latter could not tax consistently with the due process of law enjoined by the Fourteenth Amendment. And in *Galveston, Harrisburg, etc., Ry. Co.* v. *State of Texas,* 210 U. S., 217, it was held that a Texas statute imposing an annual tax of 1 per cent on the gross receipts of each railroad lying wholly within the state was not valid, inasmuch as the larger part of the gross receipts of such railroad were derived from the carriage of passengers and freight coming from, or destined to, points without the state. The view was sustained that the tax was a burden on interstate commerce and invalid so far as based on receipts derived from interstate transportation. The court said, and the citation is quoted with approval in *Western Union Tel. Co.* v. *Kansas, supra,*

"Neither the state courts nor the legislatures, by giving a tax a particular name, or by the use of some form of words, can take away the duty of this court to consider the nature and effect of a tax, and if it bears upon interstate commerce so directly as to amount to a regulation it cannot be saved by name or form."

But it is a poor rule that does not work both ways, and the question before this court is whether a railroad corpo-

ration that may happen to transport some packages intended for foreign shipments may not, along with all other corporations in the Island, be required to pay a license tax merely because of such transportation of packages. If a court may examine a statute disclaiming taxation of interstate business to find its real effect, so a court may examine a statute generally taxing receipts from railroad business to discover whether the fortuitous inclusion in such taxation of receipts from packages ultimately destined for transoceanic shipment is unconstitutional. In other words, is the imposition of such a tax, as a condition precedent to doing business, a real burden or fetter on interstate commerce?

In reality, as this railroad is necessarily located and operated entirely in Porto Rico and its receipts are due to operations carried on in Porto Rico, the question raised by this case is practically disposed of by the *Ponce Lighter Company* v. *Ponce,* 19 P. R. R., 725; but we shall give the matter of a railroad business in Porto Rico additional consideration.

As we have seen, in every case the inquiry is, What is the essential character of the commerce to be protected? The test is the character of the business.

We may assume, as did the Government, that the Central Fortuna owns a railroad which runs from a point in the interior of Porto Rico to a point or points on the coast of Porto Rico, but this is true of the other railroads in Porto Rico. It follows from the case of the *Western Union Tel. Co.* v. *Kansas, supra,* and other cases previous to the decision of that case, that Porto Rico may put terms and conditions on its purely local business whether the business conducted is done by a local corporation or not. If a domestic corporation doing a railroad business may be required first to pay a license tax, we are unable to understand the reasoning by which a foreign corporation may not be subject to the same requirement. There is a strong probability that every railroad corporation in Porto Rico transports freight

and packages intended for foreign shipment outside of the Island. We are aware that the respondent will contend that every railroad company in Porto Rico then should also be exempted from such form of taxation.

In the United States the vast majority of railroads are directly engaged in interstate business or are connected directly with other railroads or carriers in other states doing such interstate business. It may be said, perhaps, that a railroad business in the United States is almost necessarily interstate, just as an express company or a telegraph company almost always is essentially an interstate business. Therefore, the United States Supreme Court has watched such railroad business to protect its interstate character from interference or burdens by a state. A license tax as a prerequisite to doing railroad business in the United States would almost necessarily interfere with interstate commerce. The fact is necessarily otherwise in Porto Rico. *Ad ea quae frequentius accidunt jura adaptantur.* What the Central Fortuna does and what is sought to be taxed is a railroad business—a business passing upon and depending exclusively on the soil of Porto Rico. No part of such railroad business is done outside of Porto Rico, and no part of the profits or receipts sought to be taxed is located outside of Porto Rico. We have already mentioned the fact that the receipts for the railroad business done in Porto Rico are essentially and easily severable from the receipts for transportation outside of the island. This tax, although in the form of a license and a condition precedent to doing business, is regulative of a railroad business as such, and is not a tax on interstate receipts.

The respondent, especially when it is speaking of the Interstate Commerce Act, seems to imply that no railroad business may be regulated by Porto Rico, but is exclusively under the control of Congress. There is nothing in the Interstate Commerce Act which affects or touches upon the questions raised in this case, and the mere fact that Congress

has fixed the rates that may be charged for territorial transportation has no bearing. The question before us that always remains is whether the form of taxation sought to be imposed by Act No. 134 is a burden on interstate commerce. Here the real nature of the tax is for the use of the soil of Porto Rico, for the right to do the business, to appropriate exclusive highways in Porto Rico, and paying for the monopoly of such particular highway. No railroad company in Porto Rico can escape this form of tax and its regulation merely because it is a foreign corporation or merely because it transports packages ultimately destined for shipment to the United States.

The cases cited by respondent, namely, *The Daniel Ball*, 77 U. S., 557, 565; *Cincinnati, etc., Co.* v. *Interstate Commerce Commission*, 162 U. S., 184; *Heyman* v. *Southern Ry. Co.*, 203 U. S., 270; *Galveston, etc.*, v. *Texas*, 210 U. S., 217; *Railroad Commission* v. *Texas, etc., Co.*, 229 U. S., 336, 341; *St. Louis, etc., Co.* v. *Seale*, 229 U. S., 156, 161, to the effect that the local transportation of interstate packages is interstate commerce, cannot affect the decision. Act No 134 does not seek to tax interstate packages, but seeks to recover a graded license tax according to the importance of the railroad business measured by its gross receipts. The Daniel Ball case still remains the strongest case, but there the court held that no state might require a license from a steamer transporting interstate commerce when such steamer was plying the navigable waters of the United States. The court also points out that where a railroad is a chain in interstate business it would also fall under the jurisdiction of Congress. But the reasoning in each of the cited cases is that the steamship or the train is a part of interstate commerce. There was no attempt by the State in any of these cases to tax the steamship or the railroad business. The cases are further distinguished by the consideration we have pointed out that transportation on land and water within the geographical

limits of the United States proper is almost necessarily inter-
state transportation.

Any doubt that might remain is resolved by the nature
of the pleadings before us. The petitioner says that the Cen-
tral Fortuna is now doing a railroad business in Porto Rico.
The respondent admits the fact but says that it is a com-
mon carrier of interstate commerce. In the first place, the
pleadings fail to show that there are any receipts from the
interstate commerce business, to say nothing of the propor-
tion of them. The pleadings also fail to show any continu-
ous traffic or transportation. They fail to show any through
transportation of passengers or freight. We may take it
for granted, perhaps, that what the respondent meant to
say was that its railroad business was engaged in interstate
commerce, but the pleadings only set forth that the Cen-
tral Fortuna "is engaged in interstate commerce." The Cen-
tral Fortuna might very readily be doing an express busi-
ness or a forwarding business independently of its railroad
business and claim to be such an interstate carrier. We think,
under the conditions in Porto Rico, that even to say that the
railroad is engaged in interstate commerce is to state a con-
clusion of law rather than to state the facts. Furthermore,
while it may be doubtful whether this court can take judicial
notice of what the words "Central Fortuna" mean, yet it
is evident that the burden was upon the respondent to show
not only that its railroad business was a part of interstate
business, but also to show that this form of taxation was
a burden upon such interstate business.

The Act No. 134 in question in its section 2 provides that
the business or industry shall be classified by the Treasurer
of Porto Rico into one of the classes thereinafter mentioned,
according to its relative importance as measured by the vol-
ume of business transacted within Porto Rico. Hence, even
following the theory of the respondent in its main aspect,
this court could still not refuse to issue the *mandamus,* be-
cause this court could not determine from the pleadings that

any appreciable part of the receipts of the railroad company were from interstate commerce. If the receipts from the interstate commerce were small compared to the bulk of its business, then it is evident that the classification of the Treasurer would be practically unaffected by such interstate business. No local corporation or foreign corporation doing a purely local railroad business could prevent Porto Rico from collecting a license tax as a prerequisite to doing business merely because a small portion of its receipts came from interstate commerce.

Section 12 of the Act, among numerous other classifications, says that steam railroad companies devoted to the service of the public shall pay a license tax in accordance with the following classification: First class, $200; second class, $100; third, fourth and fifth classes, $25. There is no real division according to income or receipts and it would be absurd to suppose that a railroad transporting packages destined for ocean traffic should be exempt from this license tax when a railroad transporting nothing but intra-insular packages would have to pay it as a condition precedent to the business. The statute imposes a license tax on practically all business in Porto Rico and there is no discrimination against the Central Fortuna or any other alleged interstate carrier.

Given the particular physical circumstances of Porto Rico in order to conclude that the Central Fortuna was in reality carrying on interstate commerce, it would have to be shown that its railroad business was in such close connection with a steamship line as practically to be a single transaction. Even then the business would be rather in the nature of an express business than of a railroad business; and even then the railroad business could be distinguished. The fact that goods are transported from the continent to the Island in steamers and then transferred by railroad to some other point in the Island, or *vice versa,* does not convert a business done by a railroad into commerce between the States. If

the contention were true, then every person or company that transports packages in Porto Rico, no matter how limited the business might be, would be engaged in commerce between the States, inasmuch as a great part of the food, clothes and building materials comes from the United States and the greatest part of coffee, sugar, fruit and tobacco produced in the Island is exported.

The intention of the Legislature was to impose a license tax on a railroad business inasmuch as that business is done entirely within the Island. The railroad business, as such, has no interstate character, or, if it has, such character is not shown by the pleadings.

The *mandamus* in this case should be issued.

> *Petition granted and a peremptory writ of mandamus ordered to be directed to the respondent commanding it to file the sworn certificate required by the Treasurer of Porto Rico within ten days.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Hutchison did not sit at the hearing on this petition.

A motion for reconsideration of the judgment having been filed, Mr. Justice Wolf delivered the following opinion of the court thereon on April 16, 1915:

No matter what the parties may stipulate as to the facts, this court is bound to take notice that the business of a railroad company, as such, located wholly in Porto Rico, is not interstate commerce and that no part of its receipts *qua* railroad comes from interstate commerce  The Central Fortuna may be sending packages to the United States or elsewhere, but the railroad business is done wholly within Porto Rico and the receipts from such business are necessarily receipts for internal business, *i. e.,* transportation of persons and packages in Porto Rico. Act No. 134 of 1913 taxes no instru-

mentality of interstate commerce. No let or hindrance is placed on the transportation of packages from the coast of Porto Rico to the United States. There is no burden or fetter on interstate commerce and no impediment to the free flow thereof.

The petition for rehearing must be

*Dismissed.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Hutchison did not sit at the hearing on this motion.